32395. MILTON BRADLEY COMPANY OF
GEORGIA INC. *v.* COOPER *et al.*
32418. BENSON *v.* COOPER *et al.*

DECIDED MAY 20, 1949.

*Spalding, Sibley, Troutman & Kelley, W. K. Meadow,* for Milton Bradley Co.

*Louis M. Tatham, J. Richmond Garland,* for Cooper *et al.*

*Rache Bell,* for Benson.

PARKER, J.  The trial judge, after citing a number of other cases in his order overruling the general demurrers, states that the cases of *Spires* v. *Goldberg,* 26 *Ga. App.* 530 (106 S. E. 585), and *Hulsey* v. *Hightower,* 44 *Ga. App.* 455 (161 S. E. 664), are of great assistance in deciding this case.  In the latter case Hulsey was sued for furnishing a long-bladed knife to his minor son, with which he stabbed the plaintiff.  The son, 15 years of age, was alleged to be inexperienced in handling knives, careless, reckless, and indifferent as to the rights of others, which was known or should have been known by the father.  This court held, one judge dissenting, that the father was not liable for the tort of his minor child, with which he was in no way connected, which he did not ratify, and from which he did not derive any benefit, citing *Chastain* v. *Johns,* 120 *Ga.* 977 (48 S. E. 343), and that "the liability of a parent for the tort of a minor child, under the law of this State, is analogous to the liability of a master for the tort of a servant while employed in the master's business and in the scope of his employment," citing several cases.  It was also held that the liability of a father for the negligence or wrong of his child does not depend upon the parental relation, but rests upon the same grounds upon which the father will be responsible for the negligence or wrong of any other person.  These principles were held to be applicable where it is sought to hold a father liable for any injury by his child, in-

dependently of any fault on the part of the father, but not applicable where a liability is claimed against the father for a negligent or wrongful act which is personal to himself, although the act of his child may be the immediate cause of the injury; and it was held that, "if the act of a child is legally traceable to the negligence of its father, the latter may be held responsible for injury and damage occasioned thereby; but in such a case the cause of action is founded upon the negligence of the father, and not upon the negligence of the child plus the paternal relation."

In the *Spires* case the defendant sold to a minor, in violation of a criminal statute, a pistol and cartridges to be used in it, and the purchaser some two months later loaned the pistol to another minor to be used in target practice. This second minor took the pistol to school, for the purpose of returning it to the lender, and while playing with and demonstrating it to another minor, it was discharged and the plaintiff was injured. This court held that, where one violated a penal statute in selling a pistol to a minor, and injury results therefrom, he should be held liable for the injury if it was a natural and probable consequence of the violation of the statute and should reasonably have been anticipated as a natural and probable result of the unlawful act. And if, subsequently to the original wrongful act, a new cause intervened sufficient of itself to stand as the cause of the injury, the former will be considered as too remote. But if the intervening cause and its probable consequences should reasonably have been anticipated by the original wrongdoer as a natural and probable result of the wrongful act, the causal connection between the wrongful act and the injury is not broken, and an action for resulting damages will lie against the original tort-feasor. That case also held that a tortious act may have several consequences, concurrent or successive, for all of which the first tort-feasor is responsible.

It is only where it clearly appears from the petition that the negligence charged was not the proximate and effective cause of the injury that the court may, upon general demurrer, so hold. *Maddox Coffee Co.* v. *Collins*, 46 *Ga. App.* 220 (2) (167 S. E. 306). There may be more than one proximate cause of an injury. The proximate cause of an injury may be two separate and distinct acts of negligence of different persons acting concur-

rently. Where two concurrent acts of negligence operated in bringing about an injury, the person injured may recover from either or both of the persons responsible. *Callahan* v. *Cofield*, 61 *Ga. App.* 780 (7 S. E. 2d, 592) ; *Atlanta Gas Light Co.* v. *Mills*, 78 *Ga. App.* 690 (51 S. E. 2d, 705). "The most generally accepted theory of causation is that of natural and probable consequences; and in order to hold the defendant liable, the petition must show either that the act complained of was the sole occasion of the injury, or that it put in operation other causal forces, such as were the direct, natural, and probable consequences of the original act, or that the intervening agency could have reasonably been anticipated or foreseen by the original wrongdoer." *Gillespie* v. *Andrews*, 27 *Ga. App.* 509 (108 S. E. 906) ; *Kleinberg* v. *Lyons*, 39 *Ga. App.* 774 (5) (148 S. E. 535). "In order for a party to be liable as for negligence, it is not necessary that he should have been able to anticipate the particular consequences which ensued. It is sufficient, if in ordinary prudence he might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might result." *Williams* v. *Grier*, 196 *Ga.* 327, 337 (26 S. E. 2d, 698) ; *Mitchell* v. *J. S. Schofield's Sons Co.*, 16 *Ga. App.* 686, 690 (85 S. E. 978). The rule that an intervening and independent illegal act of a third person producing the injury, and without which it would not have occurred, should be treated as the proximate cause, insulating and excluding the negligence of the defendant, would not apply if the defendant "had reasonable grounds for apprehending that [such criminal act] would be committed." *Williams* v. *Grier*, supra, and cits. "Where an act is of a nature calculated to produce a certain injury, the causal connection, if any, between such act and the injury is not necessarily broken by an intervening act which bears a causal relation to the injury. Either the original act or the intervening act may be the legal cause of the injury." *Nixon* v. *Williams*, 25 *Ga. App.* 594 (1) (103 S. E. 880). "A defendant may be held liable for an injury where he commits a wrongful act which puts other forces in operation, resulting in the injury, which other forces are the natural and probable consequences of the act of the original wrongdoer, and which reasonably should have been foreseen by him as such consequences." *Louisville & Nashville R. Co.* v. *Ellis*, 54 *Ga. App.*

308

783 (2) (189 S. E. 559). "By proximate cause is not meant the last act or cause, or the nearest act to the injury, but such act wanting in ordinary care as actively aided in producing the injury as a direct and existing cause." *Southern Ry. Co.* v. *Tankersley*, 3 *Ga. App.* 548, 552 (60 S. E. 297); *Wright* v. *Southern Ry. Co.*, 62 *Ga. App.* 316, 319 (7 S. E. 2d, 793). The violation of a valid municipal ordinance is negligence per se. *Griffin* v. *Browning*, 51 *Ga. App.* 743 (3) (181 S. E. 801).

The principle running through the Georgia cases cited was applied in the famous "squib" case of Scott *v.* Shepherd, 2 Wm. Blackstone, 892, which arose in England in 1770, and which is approved in many texts on torts. In that case the defendant threw a lighted squib, made of gunpowder, etc., from the street into the market-house, where a large concourse of people were assembled. The squib "fell upon the standing of one Yates, who sold gingerbread, etc.; one Willis instantly, and to prevent injury to himself and the said wares of the said Yates, took up the said lighted squib . . and threw it across the said market-house, when it fell upon another standing there of one Ryal . . who instantly, and to save his own goods from being injured . . took up the said lighted squib . . and then threw it to another part of the said market-house," and in so throwing it struck the plaintiff in the face, putting out one of the plaintiff's eyes. Although Blackstone, J., was of the opinion that an action of trespass did not lie for Scott against Shepherd, the three other judges held to the contrary. Nares, J., was of the opinion, "That the natural and probable consequence of the act done by the defendant was injury to somebody, and therefore the act was illegal at common law. . . Being therefore unlawful, the defendant was liable to answer for the consequences, be the injury mediate or immediate. . . I do not think it necessary, to maintain trespass, that the defendant should personally touch the plaintiff. . . He is the person, who, in the present case, gave the mischievous faculty to the squib. That mischievous faculty remained in it till the explosion. No new power of doing mischief was communicated to it by Willis or Ryal. . . The intermediate acts of Willis and Ryal will not purge the original tort in the defendant. But he who does the first wrong is answer-

able for all the consequential damages." Gould, J., and DeGrey, C. J., concurred in the conclusions reached by Nares, J.

The petition in this case charges that Milton Bradley Company, a wholesale merchant in Atlanta, sold to Benson, a retail merchant in Atlanta, a quantity of the bombs made to be used as toys, and shipped them to Benson's retail store, selling to the general public in Atlanta. It is charged that this sale was in violation of the ordinance prohibiting the sale of fireworks within the City of Atlanta, except by wholesalers to persons and points outside of the city. While it is not alleged in so many words that Milton Bradley Company knew that Benson intended to sell these bombs in his store in Atlanta, we do not think such allegation was necessary to charge it with a violation of the ordinance. If Milton Bradley Company sold the bombs to Benson and delivered them to him at his retail store within the city, it did not come within the proviso in the ordinance allowing the selling and shipping of fireworks by wholesale establishments to persons and points outside the City of Atlanta. The petition charged also that each of the defendants knew, or in the exercise of due care should have known, of the inherent danger of said bombs, their dangerous character being apparent from a mere casual inspection, and that said bombs were particularly attractive to young boys. In Pizzo v. Wiemann, 149 Wis. 235 (134 N. W. 899), which seems to be well in point on its facts, it appears that the defendants, who were wholesale dealers, sold a toy pistol to the other defendants, who were retail dealers, for the purpose of sale to others. The retailers sold the pistol to the intestate, who came to his death in using it. Both of such sales were in violation of a statute, and were made with full knowledge of the dangerous character of the article. The court said that "One who does an unlawful act knowing, or with reasonable ground to believe, that it may probably result, in the natural course of events, in causing injury to some human being and regardless of whether it does or not, is liable in legal damages for the consequences, though directly brought about by the acts of other persons intervening, set in motion by the first unlawful act, and regardless of such interveners having acted with such knowledge as to be likewise liable." Under that rule, it was held that the wholesalers who sold the toy pistol to the retailers were

liable in damages for the death of the boy caused by his using the pistol.

We have not overlooked *Rucker* v. *Athens Mfg. Co.*, 54 *Ga.* 84; *Postal Telegraph-Cable Co.* v. *Kelly*, 134 *Ga.* 218 (67 S. E. 803).; *Mayor & Council of Macon* v. *Dykes*, 103 *Ga.* 847 (31 S. E. 443); *Central of Ga. Ry. Co.* v. *Price*, 106 *Ga.* 176 (32 S. E. 77); *Andrews* v. *Kinsel*, 114 *Ga.* 390 (40 S. E. 300); *Teche Greyhound Lines* v. *Daigrepont*, 60 *Ga. App.* 389 (3 S. E. 2d, 857); *Pinnell* v. *Yellow Cab Co.*, 77 *Ga. App.* 73 (47 S. E. 2d, 774); *Harper* v. *Fulton Bag & Cotton Mills*, 21 *Ga. App.* 322 (94 S. E. 286); *Belding* v. *Johnson*, 86 *Ga.* 177 (12 S. E. 304); *Henderson* v. *Dade Coal Co.*, 100 *Ga.* 568 (28 S. E. 251); *Shaw* v. *Mayor &c. of Macon*, 6 *Ga. App.* 306 (64 S. E. 1102); *Higginbotham* v. *Rome Ry. & Light Co.*, 23 *Ga. App.* 753 (99 S. E. 638), and other cases cited and relied on by counsel for the defendants. These cases discuss and apply various phases of proximate cause and other rules of negligence to different situations, but none of them appear to be directly in point. We think that it is a question for the jury to say whether the injuries to the plaintiff from being hit by an exploding bomb sold by Milton Bradley Company to Benson, as set forth in the petition of the plaintiff, were proximately caused by its negligence, and were a natural and probable consequence of the original sale, and put into operation other causal forces which were the direct, natural, and probable consequences of the original act, and whether intervening agencies, between the original act of sale and the injuries, could have reasonably been anticipated or foreseen by Milton Bradley Company, and that the court did not err in overruling its demurrer.

What has been said above applies in part also to the demurrer of Benson. Liability is asserted against him on the theory that he was negligent in having kept the bombs in his store in an open and unguarded manner, where they were easily accessible to children, and in allowing his young son to get from his store any merchandise therein without purchasing or obtaining permission to do so. Under the ruling in *Lee* v. *Georgia Forest Products Co.*, 44 *Ga. App.* 850 (163 S. E. 267), and cases therein cited, the court did not err in overruling Benson's demurrer. The bombs were explosive and dangerous instrumentalities, man-

ufactured and sold as toys to be used by children, and although their inherent danger was apparent, the young son of Benson was permitted to take one out of the store and injure the plaintiff. Whether or not Benson's alleged negligence was a proximate cause of the plaintiff's injuries was a question for the jury.

The court did not err in overruling the general demurrers of each of the defendants.

This case was considered by the whole court as provided by the act approved March 8, 1945 (Ga. L., 1945, p. 232).

*Judgment affirmed. Sutton, C. J., Gardner and Townsend, JJ., concur. MacIntyre, P. J., and Felton, J., dissent.*

FELTON, J. (dissenting in case number 32395). The plaintiff amended his petition by alleging: "1. That defendant, R. E. Benson, kept said bombs in a counter near the front of said store, and that the door to said counter was not locked or otherwise fastened, and said bomb could be procured from said counter by simply opening the door thereto, and that said door could be opened by a child. 2. That defendant, R. E. Benson, permitted his son, David Benson, the general run of the store, and permitted him to go in the counter at will and to obtain from the store any of the merchandise therein without purchasing same or obtaining prior permission. 3. That defendant, R. E. Benson, kept no guards over said bombs and made no effort of any kind and took no precautions of any nature whatsoever, to keep his son from obtaining and exploding said bomb. 4. That David Benson, the son of defendant R. E. Benson, was exceedingly fond of exploding toys, as are all boys of his age, all of which defendant R. E. Benson well knew. 5. That defendant, R. E. Benson, knew that his son David was aware of the bombs being in said counter and well knew that his son was likely to obtain one from said counter and explode same within the vicinity of the store." I think that these allegations, added to the original petition, stated a cause of action against R. E. Benson. However, I do not think that the petition as amended set forth a cause of action against Milton Bradley Company, for the reason that it is not alleged that Milton Bradley Company knew or had reason to know or should have known the facts contained in the above amendment. Therefore, the violation of the city ordinance was not actionable negligence as to the injuries shown

in this case. The injuries, under the allegations, were not the natural and probable consequences of Milton Bradley Company's violation of the ordinance. It is my opinion that the alleged negligence of Benson was a superseding cause of the injuries because it is not alleged, and cannot be held as a matter of law, that Milton Bradley Company, at the time of the sale of the bomb, should have realized that Benson would have acted as alleged in response to the situation produced by the sale, because it is not alleged, and cannot be held as a matter of law, that Milton Bradley Company would not regard the negligence of Benson as highly extraordinary; and because it is not alleged, and cannot be held as a matter of law, that the negligence of Benson was a normal response to the situation created by Milton Bradley Company's act, and that the negligent acts of Benson were not extraordinarily negligent. See 2 Restatement, Law of Torts, § 447. I think that the situation would be the same if it had been unlawful for Milton Bradley Company to sell pistols in the city and for Benson to possess them for sale and to sell them, and the child had taken one out and accidentally shot the plaintiff. There is no presumption that Benson would sell the bomb or a pistol to a child, or make it easy for a child to get possession of one. The alleged negligence of Benson alone is sufficient to insulate the negligence of Milton Bradley Company, assuming that the child is not a responsible agency or that his actions should have been anticipated. It will be noted that the violation of the sale-of-fireworks section of the city ordinance is not pleaded as an act of negligence of Benson. As to the violation of the ordinance, Benson is charged with violating it by permitting his son to explode the bomb in the city. The violation of the ordinance by Milton Bradley Company had no more causal connection with the injuries than would the violation of an ordinance against possessing the bombs by Benson have had with his liability for such injury as is here sued for.

I am authorized to state that MacIntyre, P. J., concurs in the foregoing dissent.