A90A0859. GILBERT et al. v. CSX TRANSPORTATION, INC.
A90A0860. APAC-GEORGIA, INC. v. CSX TRANSPORTATION, INC.
(397 SE2d 447)

BANKE, Presiding Judge.

Barney C. Gilbert and his wife, Betty, sued CSX Transportation, Inc., and APAC-Georgia, Inc., to recover for personal injuries sustained by Gilbert during the performance of his duties as a railroad worker for CSX. The accident occurred while Gilbert, who was employed by CSX as a "trackman," was on the premises of an asphalt plant operated by APAC, attempting to pick up a truckload of asphalt to be used in repairing a grade crossing. His claim against CSX is predicated on the Federal Employers' Liability Act, 45 USC § 51 et seq. ("FELA"), while his claim against APAC is based on common law negligence principles. His wife, who seeks damages for loss of consortium, has directed her claim solely against APAC, inasmuch as the FELA affords an employee's spouse no cause of action against the employer under such circumstances. See, e.g., *Kelsaw v. Union Pac. R. Co.*, 686 F2d 819 (9th Cir. 1982).

The loading of trucks at the APAC facility was accomplished by positioning them under a chute from which the asphalt was then discharged. Immediately after the truck in front of him had received its load and had pulled away, Gilbert proceeded forward to position his truck to be loaded. As the hood of the vehicle was passing under the chute, he heard a release of air pressure which indicated that a discharge of asphalt was imminent. He responded by pressing down on the accelerator, but the truck stalled as he did so, either because he let the clutch out too quickly or because of an engine problem. Immediately thereafter, a large quantity of hot asphalt came down the chute, striking the vehicle's hood, cab and windshield. The force of the impact caused the roof and windshield to collapse, with the result that hot asphalt poured into the passenger compartment where it came into contact with Gilbert and burned him severely.

The loading procedures in force at the APAC plant called for the truck drivers to await a combination horn and hand signal before attempting to drive their vehicles underneath the asphalt chute. It is

apparent without dispute that Gilbert was unfamiliar with these procedures and did not await such a signal on the occasion in question. However, there is evidence that his ignorance of these procedures had not prevented him from obtaining truckloads of asphalt at the APAC facility on prior occasions without incident.

Gilbert contends that CSX was negligent in the following respects: In not providing him with a truck equipped with a "cab shield" which would have prevented the cab and windshield from being crushed under the weight of an impact such as the one which occurred; in sending a "trackman" to the plant to pick up the asphalt rather than sending one of its "regularly assigned" drivers; in failing to instruct him as to the proper procedures to follow when obtaining a load of asphalt at the APAC plant; in failing to inspect the plant to determine if its procedures were reasonably safe; and in supplying him with a truck which was not in proper mechanical condition. CSX and APAC filed cross-claims against each other for indemnity and contribution, each alleging that, as between the two of them, the other had primary responsibility for the accident and thus was entirely liable for the damages. The present appeals are from an order granting summary judgment to CSX on the main claim as well as the two cross-claims. The case has been litigated with consuming intensity, the parties having thus far generated a 1,600-page record in the lower court and having filed briefs totalling over 170 pages in this court. *Held*:

1. In support of his contention that CSX was negligent in not giving him a truck equipped with a cab shield, Gilbert submitted the affidavit of an engineering expert who averred that a properly installed cab shield would have been effective in preventing the asphalt from entering the cab under the circumstances. This witness further averred that it was standard industry custom and practice for trucks which are to be loaded from overhead to be equipped with cab shields or "FOP" (falling object protective) devices. CSX contends on appeal that this latter testimony has no evidentiary value because it was based in part on a regulation promulgated by the federal Occupational Health and Safety Administration (OSHA) — specifically, 29 CFR § 1926.601 (b) (6) — which is applicable only to "construction" activities. However, even assuming, without deciding, that the grade crossing repairs for which the asphalt was to be used did not constitute a construction activity within the contemplation of the OSHA regulations, it certainly does not follow that this witness was prohibited from taking the existence of these regulations into account in reaching his conclusion that industry custom and practice called for the use of a truck equipped with a cab shield under the circumstances. We note that the witness also based his opinion in this regard on the existence of an "S.A.E." (Society of Automotive Engineers)

standard calling for the use of falling object protective devices on transport vehicles designed to be loaded from above. Generally speaking, "[e]xpert testimony as to the practices of an industry is admissible," *Dan Gurney Ind. v. Southeastern Wheels*, 168 Ga. App. 504, 506 (308 SE2d 637) (1983), as is expert testimony "as to whether a particular condition is safe or unsafe." *Pembrook Mgmt. v. Cossaboon*, 157 Ga. App. 675, 679 (278 SE2d 100) (1981). See generally OCGA § 24-9-67. We find CSX's objections to the admissibility of the opinion testimony in question (which were not, in any event, asserted in the trial court) to be without merit.

2. While CSX concedes that it owed its employees a non-delegable duty under the FELA to provide them with reasonably safe equipment and working conditions, and while it further concedes that this duty extended to work performed on the property of third parties, it contends that, in the absence of evidence showing that there had ever before been a similar accident at the APAC plant, it could not reasonably have foreseen the occurrence of such an accident and thus cannot be held liable for failing to protect Gilbert against it by providing him with a truck equipped with a cab shield. However, if industry custom and practice called for the use of a truck equipped with a cab shield under the circumstances, then it certainly was foreseeable that the failure to adhere to this custom and practice might result in the type of injury which such shields are designed to prevent.

" ' "In order for a party to be liable . . . for negligence, it is not necessary that he should have been able to anticipate the particular consequences which ensued. It is sufficient, if in ordinary prudence he might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might result. (Cits.)" ' *Milton Bradley Co. v. Cooper*, 79 Ga. App. 302, 307 (53 SE2d 761) [1949]." *Lewis v. Harry White Ford*, 129 Ga. App. 318, 320 (199 SE2d 599) (1973). " ' "The mere fact that a particular kind of an accident has not happened before does not . . . show that such accident is one which might not reasonably have been anticipated." ' " *Shannon v. Walt Disney Productions*, 156 Ga. App. 545, 547 (275 SE2d 121) (1980), rev'd on other grounds 247 Ga. 402 (276 SE2d 580) (1981).

"Under [the FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence." *Rogers v. Mo. Pac. R. Co.*, 352 U. S. 500, 506 (77 SC 443, 1 LE2d 493) (1957). See also *Currin v. Seaboard Sys. R. Co.*, 187 Ga. App. 751 (371 SE2d 142) (1988); *Southern R. Co. v. Hamilton*, 113

Ga. App. 778 (149 SE2d 842) (1966). We believe that a jury issue remains in this case as to whether CSX was negligent under the circumstances in failing to provide Gilbert with a truck equipped with a cab shield, accord *Seaboard Coastline R. Co. v. Delahunt*, 179 Ga. App. 647, 650 (9) (347 SE2d 627) (1986); and we consequently conclude that the trial court erred in granting summary judgment to CSX on the issue of its liability to Gilbert under the FELA. We do not decide whether material issues of fact also exist with respect to the remaining allegations of negligence asserted by Gilbert in support of his FELA claim, inasmuch as the trial court's order does not separately address those allegations.

3. " '[C]oncurrent and independent wrongdoers are joint tortfeasors *if* their actions produce a single indivisible result and a rational apportionment of damages cannot be made.' (Emphasis from original.)" *Phillips v. Tellis*, 181 Ga. App. 449 (352 SE2d 630) (1987), quoting *Gilson v. Mitchell*, 131 Ga. App. 321, 324 (205 SE2d 421) (1974), aff'd 233 Ga. 453 (211 SE2d 744) (1975). Inasmuch as CSX and APAC are alleged to have committed separate and independent acts of negligence which combined to cause Gilbert's injuries, they are clearly alleged to be joint tortfeasors under this standard. Thus, in the event it is ultimately determined that they are jointly and severally liable to Gilbert on the basis of such separate and independent acts of negligence, and in the event one of them eventually pays more than its share of such liability, that party could assert a claim against the other for contribution under OCGA § 51-12-32 (b). See *Goldhill v. Kramer*, 122 Ga. App. 39, 40 (3) (176 SE2d 232) (1970). However, since neither of these events has yet occurred, it cannot be determined at this point whether such liability for contribution does or does not exist. It follows that the trial court erred in granting summary judgment to CSX both on its contribution claim against APAC and on APAC's contribution claim against it.

4. "[U]nder Georgia law 'if the negligence of the tortfeasor is passive as opposed to active, a tortfeasor can seek indemnity against a party whose conduct is alleged to be the proximate cause of the injury. [Cit.]' *Colt Industries Operating Corp. v. Coleman*, 246 Ga. 559, 560 (272 SE2d 251) [1980], reversing in part *Coleman v. Clark*, 154 Ga. App. 188 (267 SE2d 824) [1980]." *Jova/Daniels/Busby, Inc. v. B & W Mech. Contractors*, 167 Ga. App. 551, 553 (307 SE2d 97) (1983). We are unable to agree with CSX that its alleged negligence in sending Gilbert to the APAC plant in a truck which was not equipped with a cab shield must, as a matter of law, be considered passive rather than active. Consequently, we hold that the trial court erred in granting summary judgment to CSX on its cross-claim against APAC for indemnification. Accord *Seaboard Coast Line R. v. Mobil Chem. Co.*, 172 Ga. App. 543, 546 (3) (323 SE2d 849) (1984). The cases cited

by CSX as support for a contrary ruling are inapposite. The holding in *Jones v. Otis Elevator Co.*, 861 F2d 655 (4) (11th Cir. 1988), upholding a claim for indemnification asserted by a building owner against an elevator maintenance contractor in an action filed against them by an invitee to recover for injuries caused by a negligently maintained elevator, was based on the theory that, as between the two defendants, the duty to inspect and maintain the elevator had been contractually assumed by the maintenance contractor. There was no such contractual assumption by APAC of any duty owed by CSX in the present case. In *Colt Indus. &c. Corp. v. Coleman*, 246 Ga. 559 (272 SE2d 251) (1980), upholding an indemnification claim asserted by a gun manufacturer against a co-defendant in a personal injury action against them arising from the accidental discharge of a pistol, the claim against the gun manufacturer was based solely on strict liability principles, whereas the claim against the co-defendant was predicated on her alleged active negligence in taking the loaded weapon into a restaurant and dropping it. In the present case, CSX is alleged to be liable on the basis of its own separate and independent acts of negligence rather than on the basis of strict liability principles. Cf. *Shackelford v. Green*, 180 Ga. App. 617 (349 SE2d 781) (1986), aff'd 257 Ga. 9 (356 SE2d 27) (1987) (employee not entitled to contribution from employer joined as co-defendant in action to recover for injuries caused by employee's negligence, where employer's alleged liability was predicated solely on agency principles).

5. We must reject APAC's contention that its alleged negligence may be considered merely passive, inasmuch as its conduct in dumping a load of hot asphalt on Gilbert was clearly of the active variety. We consequently affirm the trial court's grant of summary judgment to CSX on APAC's cross-claim for indemnification.

*Judgment affirmed in part and reversed in part. Birdsong and Cooper, JJ., concur.*

DECIDED SEPTEMBER 4, 1990 —
REHEARING DENIED SEPTEMBER 24, 1990 — 

*Jones & Granger, Gary F. Easom, C. Michael Hardman*, for appellant (case no. A90A0859).

*Webb & Daniel, Keith M. Wiener, William C. Gentry*, for appellant (case no. A90A0860).

*Alston & Bird, Jack H. Senterfitt, Gerald L. Mize, Jr., Richard T. Fulton*, for appellee.