25875.   CITY OF QUITMAN *et al* v. ELDER.

Decided March 11, 1937.

*Wallace E. Harrell, McDonald & McDonald,* for plaintiff in error.

*Bennet & Bennet, Boykin & Boykin,* contra.

FELTON, J.   W. F. Elder brought this action against the City of Quitman and the Southeastern Telephone Company, and alleged substantially as follows: that the City of Quitman sold electricity to the citizens of Quitman for a profit; that the Southeastern Telephone Company owned and operated a telephone system in said city, furnishing telephone service to its citizens; that among other lines the city owned and operated a line of wires, posts, etc., located on the east side of South Court Street in said city; that there were a number of wires located on said line about thirty feet south of the southeastern intersection of Railroad and South Court Streets; that among said wires so located there was a No. 10 wire, from which the insulation was worn, carrying a current of 2300 volts, which wire had formerly furnished power to Reinschmidt Stave Company and Quitman Cooperage Company, but the above two enterprises had been discontinued and were not being operated on July 19, 1933; that the Southeastern Telephone

Company had its lines running practically over the entire city, and among its lines was a cable attached to a pole of said company located about thirty feet south of the southeastern intersection of Railroad and South Court Streets; that on July 18, 1933, the petitioner, who was in the employment of a third person, was sent to the City of Quitman for the purpose of repairing the cables of the Southeastern Telephone Company; that he had been employed by said third person for a period of five years as a cable splicer and hanger, and repairer of short circuits, and that it was in this capacity that he was in Quitman; that on July 18 and 19, 1933, as the employee of the Central Telephone Company, he was doing said work of repairing at the instance and request of the Southeastern Telephone Company; that on July 18 and 19, 1933, he ascended and descended a certain pole thirty feet south of the intersection of the two streets above set forth, and on July 19, when he was descending from said pole, he came in contact with the above-described wire, because the wire was too close to the pole, and the contact caused the injury complained of; that the injury was due to the fact that said No. 10 wire, the property of the City of Quitman, was carrying 2300 volts, was in too close proximity (within two feet) to the pole of the Southeastern Telephone Company on which petitioner was to work, that this space of two feet was not sufficient to safeguard any persons whose duties required them to work on said pole; that said wire had been in this proximity for two years or longer before July 19, 1933; that the presence of said wire in such close proximity to said pole on which petitioner was at work, and the danger to persons working on said pole by reason of said proximity, were known to the defendants, or could have been known, in the exercise of ordinary care and diligence, and were unknown to petitioner and could not have been known by him by the exercise of ordinary care and diligence; that the defendants were negligent in causing the injury to petitioner in knowingly maintaining said wire carrying 2300 volts and said pole on which petitioner was injured at a distance of approximately two feet from each other, being in too close proximity for any one to work on the cable on said pole without jeopardizing his life; that the City of Quitman was negligent in failing and omitting to cover the No. 10 wire carrying 2300 volts with insulating material sufficient to render said wire safe to any one work-

ing on said pole as petitioner was; that the City of Quitman was negligent in the violation of two ordinances dealing with the insulation of wires by the city electrician; that the Southeastern Telephone Company was negligent in that it allowed and invited petitioner to said place of work under the conditions set out; and that petitioner had been awarded $5000 by the industrial commission against his employer, the Central Telephone Company under the workmen's compensation act.

By amendment the plaintiff alleged that this was the only time he had ever been over this part of the line of the Southeastern Telephone Company; that he did not know the No. 10 wire was carrying 2300 volts of electricity, and had no means of so knowing, as a wire carrying 2300 volts is usually a No. 6 wire; that from inspection from the ground, which petitioner made, the proximity of said No. 10 wire to the pole which plaintiff ascended could not be discovered and was not discovered by the plaintiff, nor was it discoverable, and plaintiff did not discover same while climbing said pole; that it was negligence on the part of the City of Quitman to allow said No. 10 wire which injured plaintiff to remain in the position it was in from March, 1933, to July 19, 1933, after the use of said wire by Reinschmidt Stave Company and Quitman Cooperage Company had been discontinued. Each of the defendants filed general and special demurrers to the petition, which were overruled. On the trial the jury found for the plaintiff. Exception is taken to the overruling of a motion for new trial, and to the overruling of the demurrers. This case is controlled by the rulings in *Columbus Ry. Co.* v. *Dorsey*, 119 *Ga.* 363 (46 S. E. 635), *Dorsey* v. *Columbus Ry. Co.*, 121 *Ga.* 697 (49 S. E. 698), *Zachery.* v. *Madison*, 18 *Ga. App.* 490 (89 S. E. 594), and *Culbreath* v. *Kulz*, 37 *Ga. App.* 425 (140 S. E. 419). From the allegations of the petition, it will be observed that on the day before his accident the plaintiff climbed the pole on which he was hurt. If there had been anything wrong or dangerous about the situation, he could easily have seen it at that time. It will also be observed that the plaintiff was not employed by either defendant; and if the law of master and servant would alter our conclusion, the same does not apply in this case. The allegation that it was negligence for the city to run 2300 volts through a No. 10 wire does not change the situation, where it is not alleged why the

plaintiff would have been required to exercise less care if the proper or usual amount of voltage was run through the No. 10 wire. It was error to overrule the general demurrers to the petition.

*Judgment reversed. Stephens, P. J., and Sutton, J., concur.*