### 26419. ELDER *v.* CITY OF QUITMAN *et al.*

*Bennet & Bennet,* for plaintiff.

*McDonald & McDonald, Wallace E. Harrell,* for defendant.

GUERRY, J. This is the second appearance of this case in this court. See *City of Quitman* v. *Elder,* 55 *Ga. App.* 460 (190 S. E. 445). Reference is made to that opinion for the original allegations of the petition. Before the remittitur from this court was made the judgment of the court below, the plaintiff offered an amendment by which substantially all of the original allegations of the petition as to how the injury occurred were stricken, and the following substituted therefor:

"That about thirty feet south of the southeastern intersection of Railroad and South Court Street in the City of Quitman there was located a pole of the Southeastern Telephone Company, which pole was leaning westward towards the street, the same being five degrees from perpendicular. That attached to said pole was the aforementioned cable of the Southeastern Telephone Company. That attached to the top of said pole and at a distance of about six feet above said cable was the wire of the City of Quitman fire-alarm system, which said wire ran from the top of this pole to a pole about sixty feet north of said pole, to which latter pole was attached the wire carrying the 2300 volts of electricity which injured your petitioner as hereinafter set out. That said telephone pole was about 35 feet high, and had metal steps on same for purpose of enabling any one repairing said cable to ascend and descend said pole. That on July 18, 1933, your petitioner as an employee of the Central Telephone Company, in the discharge of his duties, ascended and descended said pole, going up and coming down the westward or street side of said pole. It rained during the night of July 18th, and on the morning of July 19th, 1933. That about nine a. m. on July 19, 1933, your petitioner, in the performance of his duties as an employee of the Central Telephone Company, again ascended said pole. That said pole was top-heavy and was loosely fixed in the ground, though your petitioner did not, and could not by the use of ordinary care, discover that fact until said pole did sway at the time plaintiff was injured, as hereinafter set out. That the metal steps on said pole were slippery and wet. That due to the fact that said steps were

slippery and said pole was leaning towards the street and the pull of gravity of petitioner's body going up the west side of said pole was away from said pole, for this reason it was necessary for petitioner to swing his body to the top or east side of said pole in order to descend same. That when he did so, owing to the fact that said pole was top-heavy and loosely set in the ground, said pole began to sway. That the swaying of said pole, by reason of the fact that it was connected by the fire-alarm wire to the pole to which the 2300-volt line was attached, did cause the 2300-volt line to swing back and forth, and the swinging of said 2300-volt line and the swaying of said telephone pole caused said telephone pole and said 2300-volt line to come closer together than the two feet at which they were spaced, and in so doing said 2300-volt wire swung against petitioner, causing the injuries hereinafter set forth. That the fact that said telephone pole was top-heavy, was loosely set in the ground, and that it would sway and cause said 2300-volt wire to sway was not known to petitioner, and could not have been known by the exercise of ordinary diligence, until he was injured. That the injury to petitioner was due to the fact that the swaying of said telephone pole and the wire carrying 2300 volts made them swing closer to each other than two feet, and thus said 2300-volt wire was caused to come in contact with petitioner. That the fact that said telephone pole leaned towards the street, was loosely set in the ground, was top-heavy and would sway closer to said 2300-volt wire and would also cause said 2300-volt wire to sway, so that they would come closer together than two feet was known to defendants, or could have been known by the exercise of ordinary care and diligence, that condition having existed for 50 weeks prior to petitioner's injury; and the fact that it was loose in the ground and top-heavy and would sway and cause said 2300-volt line to sway was unknown to petitioner and could not have been known by him by the exercise of ordinary care and diligence."

The law of this case is fixed by the former decision of this court. It was held that the petition as originally filed did not set out a cause of action, for the reason that it affirmatively appeared from the allegations of the petition that the plaintiff could have avoided the consequences to himself of the defendants' alleged negligence, by the exercise of ordinary care. The petition as amended shows

that plaintiff was well acquainted with the condition of the steps on the pole being slippery; that the pole was not perpendicular, but leaned slightly towards the street; that an uninsulated wire was hung within two feet of the pole, which carried a high voltage of electricity; and that a wire of the fire-alarm system of the City of Quitman was attached to the top of the pole on which he was working, and to an adjoining pole from which the uninsulated wire which caused his injuries was hung. The plaintiff was an expert lineman and presumably familiar with the law of gravity. He was familiar with the surrounding conditions, and certainly must have known, even before he ascended the pole, that if he descended the pole on the side nearest the uninsulated wire, and if the pole did sway, it would bring the wire into contact with his body. If it was impossible for him to descend the pole on the side away from this wire, because the metal steps were slippery, ordinary prudence demanded that he attempt to ascertain whether the pole would sway, especially so when he knew that the pole was leaning towards the street, and therefore was apparently not firmly set in the ground. Certainly no man of his position, knowing all the facts, would have so heedlessly subjected himself to peril from which, once undertaken, he could not extricate himself. The allegation that he did not know, and could not have known by the exercise of ordinary care, that the pole was unsteady and would sway, amounts to a mere conclusion of the pleader, and no facts are set forth which in any manner tend to show why he could not have known of it. The judge of the superior court did not err in sustaining the demurrer.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*