## 50920, 50921. UNION CARBIDE CORPORATION v. HOLTON (two cases).

MARSHALL, Judge.

The question presented in this appeal is whether plaintiff's injuries from an exploding compressed air cylinder were proximately caused by the defendant's alleged negligence as a matter of law.

Appellee Holton, a plaintiff below, was an employee of a Holiday Inn motel in Augusta, Georgia, where he and his supervisor performed routine maintenance duties at the motel such as making keys, repairing broken beds, televisions, air conditioning units, etc. One of their duties was to clear out drain pipes at the motel which had become stopped up. One method of unplugging drains which had been used by Holton and the supervisor, was to use a pressurized air cylinder to blow it out. The cylinder which they use for this purpose was originally bought by Holiday Inn from the appellant Union Carbide, defendant below, contained a refrigerant, with a trade name of "Ucon," which was a pressurized gas used by Holiday Inn in its refrigeration units. After the Ucon had been used up, the cylinder was kept by former employees of Holiday Inn and then refilled with compressed nitrogen for use in blowing out drains.

The procedure for refilling the cylinder had been established by the supervisor before Holton came to work at Holiday Inn. The supervisor instructed Holton that in order to refill the empty refrigerant cylinder with nitrogen he had to screw a 1/4″ hose to the cylinder valve. Then he had to screw the other end of the hose into a larger nitrogen tank, which the supervisor kept on the premises. Since the valve on the nitrogen tank was larger (5/8″ or 3/4″) than that of the smaller refrigerant cylinder (1/4″) an adapter had been previously bought by someone and screwed into the nitrogen tank valve so that the 1/4″ hose could be screwed to it. Once the hose was connected at both ends, he had to open the valve on the refrigerant cylinder, "crack" the valve on the nitrogen tank, hold the hose between two fingers until it became rigid, then close the nitrogen tank valve, then close the valve on the refrigerant cylinder. After the hose was disconnected at

both ends, the smaller refrigerant cylinder could be easily carried by one of its two handles on top to the place where needed. The supervisor also instructed Holton that if the small cylinder became overpressurized, the valve would blow off the top, and that in refilling, Holton should be careful to aim that valve away from himself. The supervisor did not tell Holton the relative pressure between the tanks (2,200 p.s.i. was normal capacity for the larger nitrogen tank, and 240 p.s.i. for the small refrigerant cylinder) and Holton testified that he did not think there was any danger in this procedure and that he thought "the pressure would equalize itself." He later testified that he knew the pressure in the larger tank was higher than that in the small cylinder. There were no gauges attached to either of the tanks to indicate pressure. Nor did the smaller cylinder have a pressure release safety valve affixed to it, as believed by the supervisor.

Prior to the accident, Holton had refilled the smaller cylinder "some six to eight times" by himself, following this procedure. On the day in question, Holton and the supervisor were asked to clean out a drain in an ice-making machine at the motel. They went to the warehouse to get the air cylinder which had been filled some time previously by either one of them. Holton testified, "I walked over and picked the tank up like this and I held it up and give it a shake like that. And when I did, it exploded. . . What I was shaking it for, you know, you could tell whether it was about half full or not by feeling it that way." As a result of the explosion, Holton suffered serious injuries.

At the trial there was expert testimony from the manufacturer of the refrigerant cylinders that every cylinder it sent to Union Carbide was tested to at least 300 p.s.i, and that in his opinion the pressure which caused this particular cylinder to explode was 1,000 p.s.i. He further testified that the valve on the cylinder was a safety relief valve, but that it released only when there was extreme heat and not from overpressurization unaccompanied by a temperature rise. He testified that the valve was designed for its original contents. There was other testimony from dealers in compressed air cylinders

that these refrigerant cylinders are commonly reused but that the refilling procedure was usually done with the use of a safety regulator, gauges or a pressure release valve.

Affixed to the top of the cylinder was the original label, approximately 1 inch high and six inches long with "Ucon Refrigerant" in large letters. Across the top of the label in small print was written: "This is a no deposit, disposable cylinder. Illegal to refill or transport." In the same size print in the middle of the label was written, "Caution." under which was written in very small print: "Liquid and gas under pressure. Keep away from heat or open flame. Do not drop or refill." Holton testified that he saw the label but did not read it.

The appellees, Holton and wife, brought separate actions against the appellant, Union Carbide, for the personal injuries suffered by Holton. The complaint was based on ordinary negligence of appellant in failing to adequately warn of the specific danger of explosion and in failing to include a safety pressure release device in the manufacture of the cylinder and in failing to make the cylinder nonrefillable. Appellant defended on the ground that it was not negligent and Holton's injuries were proximately caused by his failure to exercise due care to protect himself. At the close of the appellee's case and at the end of all the evidence, the appellant moved for directed verdicts. They were denied and the case was submitted to the jury on instructions. The jury returned a verdict of $300,000 for Holton and $25,000 for his wife. Appellant appeals enumerating 15 errors, the first of which, dealing with the denial of its motions for directed verdicts, we feel is dispositive of the case. *Held:*

1. In order to hold appellant liable to Holton and his wife for negligence, the evidence must show that Holton's injuries were *proximately caused* by appellant's breach of a standard of care owed to Holton. Thus, even if the evidence did show that appellant could foresee that its cylinders would be reused and, therefore, owed a duty to Holton to warn him of the specific danger in refilling the cylinder, the breach of that duty must have resulted in fact, *and in law,* in Holton's injuries.

Proximate cause in Georgia is defined in Code § 105-2009: "Damages which are the legal and natural

result of the act done, though contingent to some extent, are not too remote to be recovered; but damages traceable to the act, but not its legal or natural consequence, are too remote and contingent." See *Brimberry v. Savannah &c. R. Co.,* 78 Ga. 641 (3 SE 274). There is no question that the explosion of the cylinder *in fact,* caused the injuries to Holton (see *Stallings v. Ga. Power Co.,* 67 Ga. App. 435, 438 (20 SE2d 776)) but whether or not the injury was the "legal and natural consequence" of the appellant's negligent act is the question which must be answered in order to determine appellant's liability vel non for the act.

It is well settled that there can be no proximate cause where there has intervened between the act of the defendant and the injury to the plaintiff, an independent, intervening, act of someone other than the defendant, which was not foreseeable by defendant, was not triggered by defendant's act, and which was sufficient of itself to cause the injury. See *Hodge v. Dixon,* 119 Ga. App. 397 (167 SE2d 377) and cases cited therein. While the question of proximate cause is usually submitted to the jury as a question of fact, it may be decided as a matter of law where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion, that the defendant's acts were not the proximate cause of the injury. *Smith v. Bel-Arbor, Inc.,* 121 Ga. App. 739 (175 SE2d 146); *Crankshaw v. Piedmont Driving Club, Inc.,* 115 Ga. App. 820 (156 SE2d 208); *Stallings v. Ga. Power Co.,* 67 Ga. App. 435, 439, supra.

Here the evidence clearly shows that there was an intervening act which prevented the acts of appellant from causing the injury. Holton's injury was not legally caused by the product (the cylinder and its contents) which left the appellant's plant, but by the product as misused by some intervening third party (whoever overpressurized the cylinder before the explosion). Had the cylinder containing Ucon as originally sold by appellant exploded, then there would have been no intervening act. But there had been a tampering or unintended reuse of the cylinder over which the appellant "neither had nor exercised control." *Artope v. Central of Ga. R. Co.,* 38 Ga. App. 91 (143 SE 127). Even if appellant could have foreseen that its disposable cylinders might be

reused, it had no control over how they might be refilled, what and how much substance would be used in them, how long they could be safely refilled, and what gauges or release valves should be used on them. No amount of labeling on the original container can instruct the consumer in all aspects of how to safely modify and reuse the cylinders, considering the myriad of conceivable reuses to which such cylinders might be put.

This case is not unlike the case of Cox v. General Motors Corp. (Ky.), 514 SW2d 197, wherein the plaintiff modified an automobile to use it as a dragster without modifying the studs which held the wheels on. As a result of the high stress placed on the studs, they sheered, causing him injury. The Kentucky Court of Appeals held (p. 200): "a seller is not liable when he delivered the product in a safe condition and subsequent mishandling or other causes made it harmful by the time it was consumed." Like the cylinder in the present case, there are numerous uses to which a car may be put other than its originally intended use. Modification of a product that changes its intended use must, if done in an unsafe manner, amount to an intervening act to relieve the original manufacturer of liability.

It was not the duty of appellant to provide equipment on the cylinder that would make it safe for refilling because it did not sell it for that purpose. It was instead the duty of the person reusing it to make it safe for the purpose for which *he* intended to use it. In effect, appellant had no "duty to protect the plaintiff against such an intervening cause." Prosser on Torts, (4th Ed. 1971), p. 283.

2. In the latter respect, there is another ground which would bar Holton's recovery, and that is his failure to exercise due care to provide for his own safety. Under Code § 105-603, "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained." Holton may not be excused from maintaining diligence for his own protection by the fact that he did not know that what he was doing was dangerous. To use a

cylinder which had been refilled in such a manner in which he or his supervisor refilled the container was *obviously dangerous.* " 'In the absence of anything to the contrary, every adult is presumed to possess such ordinary intelligence, judgment, and discretion as will enable him to appreciate obvious danger. Therefore an adult servant of ordinary intelligence will be held to be affected with knowledge of a manifest risk or danger incident to the doing of a particular thing in the operation of a machine, during his employment, although he may be inexperienced as to such operation and though the master may have failed to instruct him in respect thereto.' " *Self v. West,* 82 Ga. App. 708, 711 (62 SE2d 424).

Nor may he be excused by the fact that he was merely following the custom or practice that existed at that time in the maintenance business. "An act in accordance with custom is not relieved of its character as negligence as a matter of law merely because of the custom." *Shirley v. Woods,* 98 Ga. App. 111, 115 (105 SE2d 399); *Dawkins v. Jones,* 119 Ga. App. 796 (2) (168 SE2d 881) and cases cited therein.

Nor may Holton's conduct be excused because he is a mere servant carrying out the instructions of his supervisor. See *Wright v. Concrete Co.,* 107 Ga. App. 190, 193 (129 SE2d 351).

We believe Holton's conduct in this case is indistinguishable from conduct of plaintiffs in other cases where they are confronted with an obvious danger. See e.g., *Benson v. Action Elec. Co.,* 131 Ga. App. 623 (206 SE2d 647). Of course, counsel argues on appeal, as he did at trial, that Holton did not know of the danger. This argument could be made in every case involving an obvious danger. See *Yankey v. Battle,* 122 Ga. App. 275 (176 SE2d 714) (walking down darkened staircase); *Millholland v. Neal,* 118 Ga. App. 566 (2) (164 SE2d 451) (not turning at a curve in the road); *Miller v. Nichols Contracting Co.,* 116 Ga. App. 541 (2) (158 SE2d 263) (walking on wet dirt); *Hoover v. Seaboard A. L. R. Co.,* 107 Ga. App. 342 (130 SE2d 247) (crossing tracks in front of train); *Carroll Elec. &c. Corp. v. Simpson,* 106 Ga. App. 29 (126 SE2d 310) (touching electrified television wire); *Youngblood v. Henry C. Beck Co.,* 93 Ga. App. 451 (91

SE2d 796) (riding on construction hoist); *DeWinne v. Waldrep,* 101 Ga. App. 570 (114 SE2d 455) (standing in back of moving pick-up truck); *City of Quitman v. Elder,* 55 Ga. App. 460 (190 SE 445) (touching live wire); *Culbreath v. Kutz Co.,* 37 Ga. App. 425 (2, 3) (140 SE 419) (supporting self by holding onto insecure part of window sill). No person would conduct himself in such a manner if he knew that his conduct would result in his being injured. At some point the danger and likelihood of self-injury becomes so obvious that actual knowledge by the plaintiff is unnecessary. We must conclude that Holton failed to exercise ordinary care and diligence for his own safety in using a cylinder that had been refilled in an obviously dangerous manner.

Because of either one of these grounds, appellees were not entitled to recover against appellant as a matter of law.

*Judgments reversed with direction to enter judgments for appellant. Bell, C. J., and Webb, J., concur.*

ARGUED SEPTEMBER 15, 1975 — DECIDED NOVEMBER 7, 1975 — REHEARING DENIED NOVEMBER 25, 1975 —

*Fulcher, Hagler, Harper & Reed, W. M. Fulcher, Wiley S. Obenshain, III,* for appellant.

*Hinton R. Pierce, Claud R. Caldwell,* for appellee.