### 65265. WHIRLPOOL CORPORATION v. HURLBUT.
### 65266. SEAY v. HURLBUT.

SHULMAN, Chief Judge.

We granted these interlocutory appeals to review the trial court's denial of the motions for summary judgment of appellants Seay and Whirlpool. Both appeals have been consolidated in this court.

This action was brought by appellee to recover for injuries he

allegedly sustained as the result of an explosion that occurred in the kitchen of Seay's condominium. Seay, a secretary/homeowner, employed appellee to install tile on her kitchen floor. The existing floor covering consisted of an indoor/outdoor carpet, which had to be removed prior to installation of the tile. Appellee's contracted duties included removal of the existing carpet, cleaning of the floor, and installation of the new tile. After removal of the carpet, a majority of the rubber backing adhered to the floor. Appellee determined, after efforts at scraping the backing and adhesive, that he "needed to get some mineral spirits of some sort . . . to try to get the adhesive off the floor." Seay offered that she had mineral spirits on hand, and appellee proceeded to apply the substance to the floor. Hurlbut warned Seay "not to come into the kitchen and light . . . a cigarette or anything" because he feared an explosion from the mineral spirits, which he knew were flammable. After exhausting Seay's supply of mineral spirits, appellee purchased gasoline, which he applied to the remainder of the floor. As appellee began removing the dissolved adhesive, "all of a sudden 'boom' the room blew up," which allegedly resulted in the injuries giving rise to this action.

The kitchen contained a Whirlpool gas oven and range with continuous pilot lights for the oven and top burners. The pilot lights were located within the appliance and exposed to surrounding air. It is undisputed that the pilots were burning at the time of the explosion. Also located in the kitchen at the time of the explosion was a refrigerator allegedly manufactured by Hotpoint Appliances, a former defendant in this action. Hotpoint has been granted summary judgment by the trial court and that order is not in issue on appeal.

Appellee testified during his deposition that he "saw a stove" in the kitchen but that he "did not check the appliances." Appellee also testified that it was his experience that gas stoves had pilot lights. When asked to give his opinion about the cause of the explosion, he stated: "The only thing I could figure after laying in the hospital and thinking about it, the only exposed flame that could have been in that room would have been . . . from the oven." He stated in an affidavit offered in opposition to Seay's motion that "[o]n [the date of this incident] I did not know that the fumes and/or vapor from mineral spirits and/or gasoline could be ignited by a gas pilot light on a gas stove. At that time, it was my information and understanding that ignition of mineral spirits and/or gasoline could occur only if there was direct contact between a fire, spark or other source of ignition and the mineral spirits and/or gasoline." In his deposition he stated that he was "not sure" whether the fumes from mineral spirits could be ignited. Appellee further testified in his deposition that Seay did not warn him of the gas stove, nor did he ask Seay about any of the

kitchen appliances.

Seay testified in her deposition that she did caution appellee about the gas stove. She was aware that the gas stove had open pilot lights, and she was generally aware of the danger of exposing gasoline or mineral spirits to sources of ignition.

1. It is axiomatic that "[i]n summary judgments, all inferences, and all ambiguities, and all doubts, are resolved against the movant . . . and in favor of the party opposing the grant of summary judgment." *Summers v. Milcon Corp.,* 134 Ga. App. 182, 183 (213 SE2d 515). This is true even where the party opposing the motion would have the burden at trial. *Benton Bros. Ford Co. v. Cotton States &c. Ins. Co.,* 157 Ga. App. 448, 451 (278 SE2d 40). The "respondent's proof is treated with indulgence" ( *Whitehead v. Capital Auto. Co.,* 239 Ga. 460, 462 (238 SE2d 104)), and vague or contradictory testimony must be construed in favor of the non-movant. *Aiken v. Drexler Shower Door Co.,* 155 Ga. App. 436, 437 (270 SE2d 831). Matters relating to the likelihood or probability of a non-movant carrying his burden at trial or the credibility of the evidence have no place in the summary judgment procedure. *Cleveland v. American Motorists &c. Ins. Co.,* 163 Ga. App. 748, 750 (295 SE2d 190); *Jones v. Howard,* 153 Ga. App. 137, 142 (264 SE2d 587).

*Seay's Motion for Summary Judgment*

2. Against these unassailable principles governing review of summary judgment motions, we must apply the following relevant facts to Seay's motion: (1) the explosion was caused by the combination of the vapors or fumes from the gasoline or mineral spirits with one or more of the pilot lights in the stove; (2) Seay knew of the existence of the pilot lights and a potential danger associated with exposing gasoline or mineral spirits with sources of ignition; (3) Seay did not warn appellee of the existence of the gas stove or the pilot lights; (4) appellee knew of the flammable or combustible nature of mineral spirits and gasoline; (5) appellee knew and understood the danger associated with the contact of sparks, fire, or flame with gasoline or mineral spirits, although he did not know that mere contact between the vapors or fumes from gasoline or mineral spirits with fire or sparks could cause an explosion; (6) appellee knew to keep fire, sparks, and other sources of ignition away from the room in which he was working with mineral spirits and gasoline; (7) appellee knew there was a stove in the kitchen in which he was working; (8) appellee knew that gas stoves have pilot lights; (9) appellee did not check to see the type of stove in Seay's kitchen or make any inquiry of Seay; (10) appellee made the decision to use mineral spirits and gasoline to remove the carpet backing and adhesive; (11) appellee had some experience in the removal and

laying of floor covering; and (12) removal of the carpet and cleaning of the floor were among the duties appellee agreed to perform.

Appellee relies on the standard set forth in *Tect Constr. Co. v. Frymyer,* 146 Ga. App. 300, 302 (246 SE2d 334), for the imposition of liability on Seay: " 'The duty of ordinary care that a patron owes to his invitees is the same duty of ordinary care in keeping the premises safe which a master owes to his servant. [Cit.] In either case, two elements must exist in order to merit recovery: fault on the part of the owner, and ignorance of the danger on the part of the invitee. Accordingly, the duty which a general contractor . . . owes the subcontractor is to exercise the care of an ordinarily prudent person to prevent him from being exposed to a hazard or hazards other than those that ordinarily attend a person's presence on [the] premises where a building is under construction. [Cit.] . . . *"The basis of the proprietor's liability is his superior knowledge,* and if his invitee knows of the condition or hazard there is no duty on the part of the proprietor to warn him and there is no liability for resulting injury because the invitee has as much knowledge as the proprietor does and then by voluntarily acting in view of his knowledge, assumes the risks and dangers incident to the known condition." [Cit.]' " (Emphasis supplied.) Both Seay and appellee agree that the standard of liability for defective premises is the same whether the relationship is one of employer/employee, employer/independent contractor, or owner/ invitee, as can be seen from the above quote from *Tect Construction.* See also *Seagraves v. ABCO Mfg. Co.,* 118 Ga. App. 414 (1) (164 SE2d 242); Code Ann. §§ 66-301 and 66-303 (OCGA §§ 34-7-20 and 34-7-23).

We hold that the facts of this case, even when viewed most favorably for appellee, do not support his cause of action against Seay. As can be seen from the quote from *Tect Construction* above, the key to the imposition of liability in these situations is "the proprietor's . . . superior knowledge." See *Amear v. Hall,* 164 Ga. App. 163, 168 (296 SE2d 611). Appellee argues that this superior knowledge on the part of Seay is evidenced by her knowledge of the existence of the gas stove with open, continuous pilot lights. However, although he refused to admit knowledge of the gas stove in Seay's kitchen, appellee knew the room contained a stove and knew that gas stoves used pilot lights. He also knew to keep sources of ignition out of the room while he was working with the combustible substances. Appellee cannot, under these circumstances, hide behind his alleged lack of actual knowledge that the kitchen contained a gas stove. Being aware of the existence of a stove in the kitchen, appellant was under a duty to use his sight to discover the type of stove present. *Lane v. Maxwell Bros. & Asbill, Inc.,* 136 Ga. App. 712, 713 (222 SE2d 184).

Consequently, Seay had no superior knowledge to appellee as to the alleged source of ignition.

Appellee argues, however, that he did not appreciate the danger of soaking the floor next to a gas stove with mineral spirits and gasoline because he did not know that the fumes from these substances could be ignited. However, when viewed most favorably toward appellee, the evidence at best demonstrates that Seay's knowledge in this regard was only equal to that of appellee. Both admittedly knew that it was dangerous to work with gasoline or mineral spirits around sources of ignition, but there is no evidence that Seay knew more about these substances' technical propensities for combustion than did appellee. To the contrary, in this case a homeowner, regularly employed as a secretary, hired an allegedly experienced floor tile mechanic to tile her kitchen floor. The record unequivocally belies any assertion that Seay had greater understanding than appellee regarding the potential hazards of the task undertaken. "In an action by a servant against a master for alleged failure of duty on the part of the latter in not giving to the servant warning of a danger incident to his employment, it must appear that the master knew or ought to have known of the danger, and that the servant injured did not know and had not equal means with the master of knowing such fact, and by the exercise of ordinary care could not have known it." *Hendrix v. Vale Royal Mfg. Co.,* 134 Ga. 712 (1) (68 SE 483). The record affirmatively demonstrates that appellee had equal means with Seay of knowing the alleged danger presented by the use of mineral spirits and gasoline in connection with the work being performed by appellee. Consequently, Seay cannot be liable for appellee's injuries resulting from the explosion. *Amear,* supra, p. 169.

3. There is an additional reason why Seay cannot be liable to appellee. Although the issue has not been addressed directly by the parties, the record clearly establishes that the relationship between Seay and appellee was that of employer/independent contractor. It is undisputed that Seay agreed to pay appellee $125 for his labor in removing the existing carpet, cleaning the floor, and installing the tile. Appellee controlled the time, manner, and method of executing the work. "The test historically applied by this Court has been . . . whether the employer, under the contract, whether oral or written, has the right to direct the time, the manner, the methods, and the means of the execution of the work, as contradistinguished from the right to insist upon the contractor producing results according to the contract, or whether the contractor in the performance of the work contracted for is free from any control by the employer of the time, manner, and method in the performance of the work. [Cits.]" *Amear,*

supra, p. 165. Under the facts of this case, it is clear that appellee was an independent contractor.

4. "An individual contractor is expected to determine for himself whether his place of employment is safe or unsafe, and ordinarily may not recover against the owner for injuries sustained in the performance on the contract." *Amear,* supra, p. 167. Thus, although the owner/employer's duty of care is the same whether the injured party is an invitee, employee, or independent contractor, a greater duty of care is placed upon the independent contractor than upon the employee to insure that his method and means of performing his work is safe in view of the workplace, since the contractor has discretion over the method and means. Appellee alone chose to use mineral spirits and gasoline to aid in removal of the carpet backing and adhesive, and he chose not to inspect the surrounding appliances for sources of ignition. Since appellee had "as much knowledge as [Seay did] . . . [he] assume[d] the risks and dangers incident to the . . . condition [of which he should have known]." Id., p. 168.

*Whirlpool's Motion for Summary Judgment*

Appellee's allegations against Whirlpool arise from his theory that the stove was the source of ignition causing the explosion and fall into two categories: (1) defective or negligent design in failing to isolate or protect the pilot light from contact with vapors or fumes and in failing to include a pilotless ignition system; and (2) failure to provide sufficient warnings concerning the alleged latent dangers of the stove. The complaint sounds in both negligence and strict liability pursuant to Code Ann. § 105-106 (OCGA § 51-1-11).

5. The facts mandating judgment for Seay also mandate judgment for Whirlpool. Pretermitting the questions of whether the stove was defective in any particular, whether there was negligence in its manufacture, design, or lack of warnings, or whether appellee was "using" the product in a foreseeable manner, we hold that appellee, as a matter of law, assumed the risk of any injury accruing from his contact with the stove under the circumstances of the present case. We have already held that appellee should have discovered that the stove had pilot lights, due to the undisputed facts that he was aware of the stove, that it was his personal experience that gas stoves had pilot lights, and that he was aware that all sources of ignition should be kept away from the substances he was applying to Seay's kitchen floor. " '[I]t is well-established that there is no duty resting upon a manufacturer or seller to warn of a product-connected danger which is obvious or generally known, or of which the person who claims to be entitled to the warning has actual knowledge. The same rule applies where it appears that the person using the product should know of the

danger, or should in using the product discover the danger.' [Cit.] This rule has manifested itself in the doctrine of assumption of the risk..." *Hunt v. Harley-Davidson Motor Co.,* 147 Ga. App. 44, 45 (248 SE2d 15). " '[I]f the user or consumer discovers the defect and is aware of the danger, but nevertheless proceeds unreasonably to make use of the product, he is barred from recovery.' [Cit.]" *Center Chemical Co. v. Parzini,* 234 Ga. 868 (5) (218 SE2d 580).

As appellee himself testified, the fact that gasoline "would ignite" is "one of the warnings you learn early in life." His actual knowledge of this property of gasoline and mineral spirits is the reason he warned Seay not to strike any matches or smoke in the room in which he was working. He cannot hide behind his sworn statement that he did not know the vapors or fumes from the substances could be ignited by the pilot lights, for the record repeatedly establishes that he was aware that no source of ignition should have been present in the kitchen while he was working with the mineral spirits and gasoline. It is not important whether he knew the precise, physical nature of the hazard presented by his "use" of the product; it is sufficient if he is aware generally that the "use" being made of the product is dangerous. Under the facts of this case, appellee clearly knew that it was dangerous to soak the floor adjacent to a gas stove with gasoline and mineral spirits. Accordingly, he cannot recover from Whirlpool for the injuries sustained in the resulting explosion, either under a theory of strict liability (*Hunt,* supra; *Center Chemical Co.,* supra), or under a theory of negligence (Code Ann. § 105-603 (OCGA § 51-11-7); *Union Carbide Corp. v. Holton,* 136 Ga. App. 726 (222 SE2d 105)).

We are aware of the statement in *Brooks v. Douglas,* 163 Ga. App. 224, 225 (292 SE2d 911), that "in order for [the doctrine of assumption of the risk] to apply it must be shown that [the plaintiff] had actual knowledge of the defect and danger and that he used the product unreasonably." We note that one judge concurred in the judgment only in *Brooks;* thus, pursuant to Rule 35 (b) of the Rules of the Court of Appeals (Code Ann. § 24-3635), the case is not binding precedent. Nevertheless, application to the present case of the principle enunciated in *Brooks* does not demand a different result. The requirement of actual knowledge of the defect is founded on the proposition that the user of a product has no duty to inspect the product for defects. *Brooks,* supra. Therefore, in this case appellee would not be barred from recovery on the doctrine of assumption of the risk if he had been unaware that gas stoves used pilot lights or contained any other source of ignition, even though he may have been aware of the presence of a gas stove in Seay's kitchen. However, he was aware that gas stoves contained pilot lights, and he was aware

that any flame or spark should be kept out of the work area when using gasoline and mineral spirits. Thus, he knew of the alleged product defect and of the dangers flowing therefrom. His lack of knowledge went merely to the fact that Seay's kitchen contained a gas stove. This is not ignorance of the claimed product defect, but rather ignorance of the presence of the product itself, which we have held he had a duty to discover. See Division 2 of this opinion. A user does not have a duty to inspect products for defects, but he may, depending on the facts of the case, have a duty to discover the existence of the alleged defective product. If so, and if he has actual knowledge of the nature of the defect and the danger accruing therefrom, he cannot recover if he uses, or places himself in a position to be reasonably affected by (*Center Chemical Co.,* supra, p. 868), the product.

This court has held repeatedly that a "manufacturer is under no duty to guard against injury from an obvious or patent peril." *Greenway v. Peabody Intl. Corp.,* 163 Ga. App. 698, 704 (294 SE2d 541). See also *Stodghill v. Fiat-Allis Constr. &c,* 163 Ga. App. 811, 813 (295 SE2d 183) (manufacturer has no duty to warn of "obvious common danger"); *Hunt v. Harley-Davidson Motor Co.,* supra. The stove's alleged defect, negligent manufacture and design, and inadequate warnings all arise from a product characteristic of which appellee had actual knowledge. Although we are unable to determine from the record in this case whether this product characteristic would have been obvious to any reasonable man, i.e., whether the product is not defective as a matter of law, as in *Greenway* and *Stodghill,* the record mandates the conclusion that the characteristic was obvious to appellee and that his "use" of the product in view of that knowledge was unreasonable. Consequently, appellee is barred from any recovery against Whirlpool.

6. Although issues such as those presented by this case are normally reserved for the jury, they are subject to summary adjudication in indisputable cases. *Chapman v. St. Francis Hosp.,* 156 Ga. App. 5, 6 (274 SE2d 62); *Union Carbide Corp. v. Holton,* supra. Compare *Giordano v. Ford Motor Co.,* 165 Ga. App. 644 (299 SE2d 897), wherein a jury issue remained as to whether the plaintiff had actual knowledge of the danger of priming a carburetor with gasoline while another person was cranking the engine. For the reasons stated, the facts of this case demonstrate no genuine issue of material fact as to either Seay's or Whirlpool's liability to appellee. Accordingly, the trial court erred in denying their motions for summary judgment. Code Ann. § 81A-156 (OCGA § 9-11-56).

*Judgments reversed. Quillian, P. J., concurs. Carley, J., concurs specially.*

Decided March 9, 1983 —
Rehearing denied March 30, 1983 — 

Paul M. Hawkins, H. Lane Young II, for appellant (case no. 65265).

Richard P. Schultz, for appellee (case no. 65265).

Glenn Frick, R. Daniel McGinnis, Hamilton Lokey, for appellant (case no. 65266).

Richard P. Schultz, for appellee (case no. 65266).

Carley, Judge, concurring specially.

I completely agree with the majority that the trial court erred in denying each appellant's motion for summary judgment. With regard to Division 6 of the majority opinion, I agree that Giordano v. Ford Motor Co., 165 Ga. App. 644 (299 SE2d 897) (1983) is distinguishable from this case. However, I do not agree with the reasoning by which the majority has made this "distinction." In Giordano the product was a carburetor and Giordano's "priming" of that carburetor could be found by a trior of fact to be a reasonably foreseeable use of the product. In the case at bar, the conduct of appellee prior to the explosion, is not technically a "use" of the product at all and certainly cannot be characterized as reasonably foreseeable. See Hunt v. Harley-Davidson Motor Co., 147 Ga. App. 44 (248 SE2d 15) (1978).

On Motion for Rehearing.

Appellee has argued in part on motion for rehearing that this court has adopted an "objective" standard for determining the applicability of assumption of the risk to product liability actions. This is a misinterpretation of our holding in this case. As we have pointed out, it is appellee's admitted knowledge of the alleged product defect and his admitted appreciation of the danger associated therewith that bar him from recovery against Whirlpool. It is appellee's admitted knowledge, and not the obviousness, from an objective standpoint, of the hazard resulting in the subject incident that forms the basis of our holding.

The application of the assumption of the risk doctrine has been reaffirmed by the Supreme Court in Deere & Co. v. Brooks, 250 Ga. 517 (299 SE2d 704), which overruled Division 1 of Brooks v. Douglas, cited in Division 5 above. Although Deere & Co. involved a different form of assumption of the risk, the Supreme Court recognized that "[i]n most product-liability cases, the manufacturer's defense will be that the plaintiff assumed the risk that the defect in the product would produce the injury sustained by using it with actual knowledge

of the defect." Id., p. 520. Since the record in this case establishes without genuine issue such knowledge on the part of appellee, he is precluded from recovery.