Lauren David **THORNTON,**
**Plaintiff–Appellant,**

v.

**E.I. DU PONT DE NEMOURS AND COMPANY, INC., Defendant–Appellee.**

No. 93–8014.

United States Court of Appeals,
Eleventh Circuit.

June 8, 1994.

Roger J. Dodd, L. Warren Turner, Jr., Valdosta, GA, for appellant.

W. Gus Elliott, Valdosta, GA, Raymond Michael Ripple, E.I. Du Pont De Nemours and Co., Wilmington, DE, for appellee.

Before BLACK, Circuit Judge, FAY, Senior Circuit Judge, and GRAHAM *, District Court Judge.

GRAHAM, District Judge:

This is a diversity personal injury action. In April, 1991, Plaintiff filed his complaint for damages alleging that Defendant's 3608S Acrylic Lacquer Thinner contained a design defect and inadequate warnings. Plaintiff later filed an Amended Complaint. In August, 1992, Defendant filed its motion for summary judgment to which Plaintiff filed a

* Honorable Donald L. Graham, U.S. District Judge for the Southern District of Florida, sitting by designation.

response. The district court granted Defendant's motion and entered summary judgment in its favor. This appeal followed.

## I. FACTS

On May 4, 1989, Charles Giddens and his wife, Carolyn Giddens, were remodeling a home in Lakeland, Georgia. Mrs. Giddens intended to remove the existing carpeting and replace it with vinyl tile flooring. After the carpeting was removed and the glue for the tile flooring was applied, Mrs. Giddens changed her mind and decided to remove the glue and reseal the flagstone flooring that was underneath the carpet. Mrs. Giddens contacted the maintenance crew at the Louis Smith Memorial Hospital in Lakeland and was referred by the maintenance supervisor, Aaron Dennis ("Dennis"), to the Plaintiff, Lauren David Thornton ("Thornton").

On May 5, 1989, Thornton and Dennis went to the Giddens' home to discuss the job with Mrs. Giddens. Thornton and Dennis brought with them a stiff brush with a long handle, some lacquer thinner and a putty or scraper knife. Dennis applied the lacquer thinner to some of the dried glue on the floor and decided to use lacquer thinner with an electric buffer that belonged to the hospital to complete the job. Dennis and Thornton needed more lacquer thinner and Mrs. Giddens stated that her husband's dealership, Giddens Chevrolet, had some in stock.

Mrs. Giddens and Thornton went to the Chevrolet dealership and obtained one can of Du Pont 3608S lacquer thinner and one can of Du Pont reducer from the parts department. Mrs. Giddens told the parts manager, Bill Noles, that she needed lacquer thinner to clean a stoneflag floor. Neither Mrs. Giddens nor Thornton are certain as to what product was in the can of reducer. Thornton did not read the label on the cans of lacquer thinner nor did he read the label on the can of reducer. Thornton had used lacquer thinner on two or three prior occasions but never read the label on the containers.

Thornton began to use the thinner and reducer to remove the glue from the floor. While doing this, he kept the windows and doors open in order to allow ventilation. The process involved putting the thinner on the floor and buffing it with the electric buffer. Thornton used most of the lacquer thinner and reducer and accordingly asked a contractor, Ms. Zelna Shaw, to tell Mrs. Giddens that he needed more lacquer thinner. Mrs. Giddens subsequently brought two additional cans of lacquer thinner. After continuing the cleaning buffing process, Thornton saw flames emitting from the buffer. Immediately thereafter, he was engulfed in flames. As a result, he was severely injured, suffering third degree burns over seventy percent (70%) of his body. As a result of his injuries, he was hospitalized for over two (2) months. He has undergone numerous surgeries, is permanently scarred and will have some permanent disability.

Thornton contends that Du Pont 3608S Acrylic Lacquer Thinner ("Du Pont 3608S") caused the fire and his injuries. Du Pont 3608S is a specialized automotive paint product designed for use in automotive painting. It is available only through authorized distributors of Du Pont automotive paint products. Du Pont 3608S was designed for use by professionals in the automotive refinish industry and is marketed for use as an automotive refinish product. Du Pont literature recommends the product only for automotive refinish application. Du Pont 3608S is distributed pursuant to a distributorship agreement which requires the distributors to sell automotive refinish products to professional automotive refinishers only. The agreement prohibits the distributor from recommending use of the product for purposes or processes not recommended in Du Pont's literature or approved in advance by Du Pont. Purchasers of Du Pont 3608S are provided a Material Safety Data Sheet ("MSDS") which provides detailed information on the health hazards of lacquer thinners and cleaning solvents. Du Pont 3608S is not available at local hardware stores. The product which Mrs. Giddens obtained was purchased by Giddens Chevrolet from one or two businesses that sell automotive parts and automotive paint.

Du Pont 3608S is highly flammable. Its vapors can be ignited by merely turning on a light switch. A one gallon can of Du Pont 3608S was being used by Thornton at the

time of the accident. The can contained a child proof cap and was colored brown and white.[1] The top front of the label states that the product is "FOR INDUSTRIAL USE ONLY [sic] by professional, trained painters. Not for sale to or use by the general public" and identifies the product as follows:

AN AUTOMOTIVE PAINT PRODUCT

3608S

ACRYLIC

LACQUER THINNER

SPOT/PANEL REPAIR—60—70 F

LACQUER OR ACRYLIC
UNDERCOATS—
MODERATE TEMPERATURES

Below the product description is the product use:

A quality thinner for use in lacquer and acrylic undercoats in moderate temperatures. Ideal for use in Lucite Acrylic Lacquer and 380 S Lacquer Clear for spot and panel repairs in cool weather.

Below the description is a warning as follows:

**DANGER!**

EXTREMELY FLAMMABLE LIQUID AND VAPOR. VAPORS MAY CAUSE FLASH FIRE. HARMFUL OR FATAL IF SWALLOWED. VAPORS AND SPRAY MIST HARMFUL IF INHALED. MAY CAUSE CENTRAL NERVOUS SYSTEM EFFECTS SUCH AS DIZZINESS, HEADACHE, OR NAUSEA. MAY CAUSE NOSE, THROAT, EYE AND SKIN IRRITATION. CAN BE ABSORBED THROUGH THE SKIN.

Follow cautions on side panel.

The side panel contains the product identification and the following warning:

ACRYLIC

**LACQUER THINNER**

**IMPORTANT:** may be used with other components. Mixture will have hazards of both components. Before opening the packages, read all warning labels. Follow all precautions.

**NOTICE:** Repeated and prolonged overexposure to solvents may lead to permanent brain and nervous system damage. Eye watering, headaches, nausea, dizziness and loss of coordination are signs that solvent levels are too high. Intentional misuse by deliberately concentrating and inhaling the contents may be harmful or fatal.

Do not breathe vapors or spray mist. Do not get in eyes or on skin.

WEAR A PROPERLY FITTED VAPOR/PARTICULATE RESPIRATOR approved by NIOSH/MISHA for use with paints (TC–23C), eye protection, gloves and protective clothing during application and until all vapors and spray mist are exhausted. In confined spaces, or in situations where continuous spray operations are typical, or if proper respirator fit is not possible, wear a positive-pressure, supplier-air respirator (NIOSH/MSHA TC–19C). In all cases, follow respirator manufacturer's directions for respirator use. Do not permit anyone without protection in the painting area.

Keep away from heat, sparks and flame. VAPORS MAY IGNITE EXPLOSIVELY. Vapors may spread long distances. Prevent build up of vapors. Extinguish all pilot lights and turn off heaters, non-explosion proof electrical equipment and other sources of ignition during and after use and until all vapors are gone. Do not transfer contents to bottles or other unlabeled containers. Close container after each use. Use only with adequate ventilation.

**FIRST AID:** If affected by inhalation of vapor or spray mist, remove to fresh air. In case of eye contact, flush immediately with plenty of water for at least 15 minutes and call a physician; for skin, wash thor-

---

1. Neither party caused an original label of Du Pont 3608S to be placed in the record.

oughly with soap and water. If swallowed, **CALL A PHYSICIAN IMMEDIATELY. DO NOT** induce vomiting.

**KEEP OUT OF REACH OF CHILDREN.**

The product label complied with the requirements of the National Paint and Coatings Association ("NPCA"), the Chemical Manufacturer's Association ("CMA"), the American National Standards Institute ("ANSI") and the Occupational Health and Safety Act ("OSHA").

## II. STANDARD OF REVIEW

■ The Court's review of a grant of summary judgment is *de novo. Vernon v. F.D.I.C.,* 981 F.2d 1230, 1232 (11th Cir.1993). The Court applies the same legal standards as those that controlled the district court. *Industrial Partners, Ltd. v. CSX Transp., Inc.,* 974 F.2d 153, 155 (11th Cir.1992) (citing *Martin v. Baer,* 928 F.2d 1067, 1070 (11th Cir.1991)). Summary judgment is appropriate only if it appears through pleadings, depositions, admissions and affidavits that there is no "genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); *Real Estate Financing v. Resolution Trust Corporation,* 950 F.2d 1540, 1542 (11th Cir.1992); *McGahee v. Northern Propane Gas Co.,* 858 F.2d 1487, 1493 (11th Cir.1988). Materiality is determined by the substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. at 2511.

## III. DISCUSSION

### a. Misuse of the Product

■ Product misuse is defined as use of a product in a manner that could not reason-

ably be foreseen by the defendant. *Ellsworth v. Sherne Lingerie, Inc.,* 303 Md. 581, 596, 495 A.2d 348, 355 (1985). Misuse of a product may bar recovery against the manufacturer where the misuse is the sole proximate cause of damage, or where it is the intervening or superseding cause. *Ellsworth,* 495 A.2d at 355. A manufacturer is not liable for injuries resulting from abnormal use of the product. *Union Carbide Corp. v. Holton,* 136 Ga.App. 726, 222 S.E.2d 105, 109 (1975); *Barnes v. Harley–Davidson Motor Co.,* 182 Ga.App. 778, 357 S.E.2d 127, 130 (1987).

■ In the instant case, Thornton's use of Du Pont 3608S to remove glue from the floor of the Giddens' home could not reasonably be foreseen by Du Pont. While it may be foreseeable that employees might use products obtainable at the workplace for their own personal use rather than buying said products at retail prices, it is unlikely that manufacturers would envision the wife of the owner of a business establishment taking a product from the workplace to her home for use by someone unconnected with her husband's business. Thornton's misuse of the product is the proximate cause of his injuries, therefore, he is precluded from recovery. *See, Union Carbide Corp. v. Holton,* 136 Ga.App. 726, 222 S.E.2d 105, 108–109 (1975) (plaintiff precluded from recovery where injury caused by unforeseeable misuse of product); *Roy v. Star Chopper Co., Inc.,* 442 F.Supp. 1010, 1019 (D.R.I.1977) (misuse is a complete defense to liability based on any theory); *Higgins v. E.I. Du Pont de Nemours & Company,* 863 F.2d 1162, 1167 (4th Cir.1988) (misuse precluded recovery against the manufacturer); *Helene Curtis Industries, Inc. v. Pruitt,* 385 F.2d 841, 856 (5th Cir.1967) (manufacturer not liable for abnormal handling of product).

### b. Adequacy of the Warning

■ Thornton alleges that Du Pont is strictly liable under OCGA § 51–1–11.[2]

---

**2.** OCGA § 5–1–11(b)(1) provides:

The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by

Strict liability is not imposed under OCGA § 51–1–11(b) merely because a product may be dangerous. *Copeland v. Ashland Oil, Inc.,* 188 Ga.App. 537, 373 S.E.2d 629, 630 (1988) (citation omitted). If products are properly prepared, manufactured, packaged and accompanied with adequate warnings and instructions, they cannot be said to be defective. *Id.*

 Under Georgia law, a manufacturer has a duty to warn of nonobvious foreseeable dangers from the normal use of its product. *Stovall & Co. v. Tate,* 124 Ga.App. 605, 184 S.E.2d 834, 837 (1971); *Poppell v. Waters,* 126 Ga.App. 385, 190 S.E.2d 815, 817 (1972). This duty may be breached by (1) failing to adequately communicate the warning to the ultimate user or (2) failing to provide an adequate warning of the product's potential risks. *Rhodes v. Interstate Battery System of America,* 722 F.2d 1517, 1519 (11th Cir.1984) (citing *Stapleton v. Kawasaki Heavy Indus., Ltd.,* 608 F.2d 571, 573 (5th Cir.1979), modified on other grounds, 612 F.2d 905 (5th Cir.1980)). Both of these issues are uniformly held to be questions for the jury. *Id.*

 For a warning to be adequate, it must provide a "complete disclosure of the existence and extent of the risk involved." *Pavlides v. Galveston Yacht Basin,* 727 F.2d 330, 338 (5th Cir.1984) (citing *Alman Brothers Farm & Feed Mill, Inc. v. Diamond Laboratories, Inc.,* 437 F.2d 1295, 1303 (5th Cir.1971)). Whether a warning is legally sufficient depends upon the language used and the impression that such language is calculated to make upon the mind of the average user of the product. *Pavlides,* 727 F.2d at 338 (citing *Bituminous Casualty Corp. v. Black & Decker Manufacturing Corp.,* 518 S.W.2d 868, 873 (Tex.Civ.App.—Dallas 1974); *Shell Oil Co. v. Gutierrez,* 119 Ariz. 426, 434, 581 P.2d 271, 279 (Ct.App.1978)) (citation omitted). The adequacy of the warning must be evaluated in conjunction with the knowledge and expertise of those who may be

reasonably expected to use or otherwise come in contact with the product as it proceeds along its intended marketing chain. *Martinez v. Dixie Carriers, Inc.,* 529 F.2d 457, 465–466 (5th Cir.1976). *See also, Stiltjes v. Ridco Exterminating Co.,* 178 Ga.App. 438, 343 S.E.2d 715, 719 (1986), *aff'd,* 256 Ga. 255, 347 S.E.2d 568 (1986) (where product sold to particular group or profession, manufacturer is not required to warn against risks generally known to such group or profession).

The record reveals that Du Pont marketed the subject product solely to professionals. The product carried a warning of the hazards connected with its use. Said warning was reasonably calculated to reach the average user and contained clear and simple language.

 The general rule in Georgia is that the adequacy of the warning is an issue for the jury. *Watson v. Uniden Corp. of America,* 775 F.2d 1514, 1516 (11th Cir.1985); *White v. W.G.M. Safety Corp.,* 707 F.Supp. 544, 549 (S.D.Ga.1988); *Copeland v. Ashland Oil, Inc.,* 188 Ga.App. 537, 373 S.E.2d 629, 630 (1988). Whether adequate efforts were made to communicate a warning to the ultimate user and whether the warning if communicated was adequate are uniformly held questions for the jury. *Stapleton v. Kawasaki Heavy Indus., Ltd.,* 608 F.2d 571, 573 (5th Cir.1979) (citations omitted).[3] The undisputed facts in this case establish that the product was marketed through distributors for use by professionals and that the product carried a warning of the hazards connected with its use. In addition, a MSDS was provided that detailed the characteristics of the product. Summary judgment is appropriate where, as in this case, the facts support only one conclusion, that is, the warning and its communication were adequate.

### c. Failure to Read the Warning

 Georgia courts have held that a plaintiff's failure to read a warning printed

---

the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.

**3.** The Eleventh Circuit in *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), adopted as binding precedent decisions of the Fifth Circuit rendered prior to October 1, 1981.

on a product constitutes contributory negligence and precludes recovery against the product's manufacturer. *Cobb Heating and Air Conditioning Co. v. Hertron Chemical Co.*, 139 Ga.App. 803, 229 S.E.2d 681, 682 (1976); *Parzini v. Center Chemical Co.*, 129 Ga.App. 868, 201 S.E.2d 808, 809, rev'd on other grounds, 234 Ga. 868, 218 S.E.2d 580 (1975); *McCleskey v. Olin Mathieson Chemical Corp.*, 127 Ga.App. 178, 193 S.E.2d 16, 18 (1972). Thornton contends that the communication of the warning in addition to the warning itself was inadequate, therefore, his failure to read said warning does not bar recovery. Failure to read a warning does not bar recovery when the plaintiff is challenging the adequacy of the efforts of the manufacturer or seller to communicate the dangers of the product to the buyer or user. *Rhodes v. Interstate Battery System of America*, 722 F.2d 1517, 1519 (11th Cir.1984) (citing *Stapleton v. Kawasaki Heavy Indus., Ltd.*, 608 F.2d 571, 573 (5th Cir.1979)); *White v. W.G.M. Safety Corp.*, 707 F.Supp. 544, 549 (S.D.Ga.1988).

In *Rhodes,* the plaintiff alleges that he was unaccustomed to handling the product and did not have the opportunity to view the product and its warning in adequate lighting. The court in *Rhodes* found that there was a factual issue as to the adequacy of the defendant's communication of the warning. *Rhodes* is distinguishable from the case *sub judice.* In the case *sub judice,* Thornton testified that he had used lacquer thinner two or three times previously and had never read the label. Thornton had the opportunity to read the label and failed to do so. It is unclear what Du Pont would be required to do in order to communicate the warning to Thornton on this particular occasion.

Thornton was contributorily negligent by failing to read the warning, therefore, any insufficiency in the warning label is not the proximate cause of his injuries.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.