[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12034

_____

ANGUS F. MCDUFFIE,
STEVEN M. RAFSKY,
GRETA RAFSKY,
RONALD LANG,
LARRY SCHUMER,
ARIEL H. MARTIN,
as personal representative of the
Estate of deceased
Gary Hendershot,
WILLIAM J. BRASSARD,
AMY D. BRASSARD,

Plaintiffs-Counter
Defendants-Appellants,

*versus*

2                    Opinion of the Court                    21-12034

SUE BOSEVICH,
as Executrix of the Estate of deceased
Dan Sautner,
BRIAN AUSTIN,
MICHAEL MCLANE,
HAWTHORNE 2018 LLC,
619047 ONTARIO LTD,

Defendants-Counter
Claimants-Appellees,

JANICE SAUTNER,
ELIZABETH AUSTIN,
SMALLBIZPROS INC.,

Defendants-Appellees

———————————

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 3:19-cv-00087-CDL

———————————

Before WILLIAM PRYOR, Chief Judge, LUCK, Circuit Judge, and MOORER,[*] District Judge.

PER CURIAM:

This appeal requires us to decide whether three agreements signed by a group of shareholders created an enforceable, weighted voting scheme for a portion of shares in a company. A group of aggrieved shareholders of SmallBizPros, Inc., appeal a summary judgment in favor of rival shareholders in "a dispute about who owns the controlling number of voting shares in the corporation in which the parties share ownership." The aggrieved shareholders argue that three agreements signed in 2000 and 2003 created a 40-20-40 voting scheme between three groups of shareholders. Because the district court correctly rejected that argument, we affirm.

The parties dispute the meaning of three agreements: the "Holdco Agreement" signed in 2000, an agreement signed in April 2003, and an agreement signed in November 2003. All three agreements were signed by Dan Sautner, Brian Austin, and Steven Rafsky, and the November 2003 Agreement was also signed by their spouses. Sautner and Austin were the founders of the Padgett companies, the predecessors of SmallBizPros, and Rafsky was the new chief executive officer of Padgett and the owner of Stegre, a Padgett franchise.

---

[*] Honorable Terry F. Moorer, United States District Judge for the Southern District of Alabama, sitting by designation.

The Holdco Agreement anticipated a restructuring of the ownership interests in the predecessor companies and franchise using holding companies. The original shareholders of the predecessor companies would own the holding companies, and in turn, the holding companies would own 60 percent of SmallBizPros. New shares of Padgett would be issued so that 40 percent of shares would be available for new investors. The Holdco Agreement explained how the shares in the holding companies would be voted: "[T]he Padgett Shareholders and the Stegre Shareholders w[ould] vote their shares" in the holding companies such that "the Padgett Shareholders w[ould] control and vote 40 [percent] of the stock of [Padgett] and . . . the Stegre Shareholders w[ould] control and vote 20 [percent] of the stock in [Padgett]."

The signatories eventually abandoned the plan to form the holding companies and instead decided to merge the Padgett companies and Stegre franchise to create SmallBizPros. The April 2003 Agreement provided that instead of creating the holding companies, Stegre and Padgett would be merged into one company called SmallBizPros, and "all shareholders w[ould] be issued shares of SmallBizPros stock." The April 2003 Agreement also stated that the companies' "arrangements [we]re now governed by the Holdco [A]greement . . . and this agreement." And the November 2003 Agreement reaffirmed that SmallBizPros was "organized . . . according to two documents: the Holdco [A]greement . . . and [the April 2003 Agreement]."

21-12034              Opinion of the Court                  5

The Sautners, Austins, and their allied shareholders allegedly obtained a controlling interest in SmallBizPros by 2019, at which time they acted to remove the members of SmallBizPros' board of directors, including Rafsky, and to elect Sautner, Austin, and another shareholder as the new directors. The aggrieved shareholders—the Rafskys and several of the new investors—filed a complaint in October 2019 against these rival shareholders, seeking both declaratory and injunctive relief. Both sides moved for summary judgment.

The district court ruled in the rival shareholders' favor. The district court rejected the aggrieved shareholders' argument that the plain meaning of the Holdco Agreement created a 40-20-40 voting scheme between the original Padgett Shareholders, the Stegre Shareholders, and the new investors. And the district court explained that the April 2003 Agreement "cast further doubt that its parties intended to abide by a 40-20-40 voting plan."

We review an appeal from summary judgment *de novo*. *Thornton v. E.I. DuPont de Nemours & Co.*, 22 F.3d 284, 288 (11th Cir. 1994). A party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

The district court correctly concluded that the Holdco Agreement did not establish a 40-20-40 voting scheme. The Holdco Agreement established only that the original Padgett Shareholders would control 40 percent of the Padgett vote *through their shares in the holding companies*. But the Holdco Agreement did not

prohibit the original Padgett Shareholders from accumulating voting power by directly investing in Padgett and purchasing some of the 40 percent of shares opened to new investors. So, the Holdco Agreement did not establish a 40-20-40 voting scheme.

In any event, the purported 40-20-40 voting scheme did not survive the April 2003 Agreement, which abandoned the plan to create holding companies. Under the April 2003 Agreement, all shareholders were to become direct shareholders in SmallBizPros. The Holdco Agreement's vote-allocation provision became meaningless after the plan to create the holding companies was abandoned, so it does not affect the voting weight of shares in SmallBizPros.

Because the agreements do not operate as the aggrieved shareholders argue, the aggrieved shareholders cannot succeed in their appeal, and we need not reach the parties' arguments about the proper interpretation of Georgia law. *See* GA. CODE ANN. § 14-2-731.

The summary judgment in favor of the rival shareholders is **AFFIRMED**.