A02A2397. SMITH v. LOCAL UNION NO. 1863, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION OF CLERKS & CHECKERS.
(580 SE2d 566)

RUFFIN, Presiding Judge.

R. D. Smith, Jr. sued Local Union No. 1863 of the International Longshoremen's Association of Clerks & Checkers (the "Union"), alleging that the Union failed to employ him "because of [his] handicap." The Union did not file an answer, but moved to dismiss the complaint on the ground that it failed to state a claim upon which relief could be granted. Smith opposed the Union's motion and moved for a default judgment. The trial court denied Smith's motion and granted the Union's motion to dismiss. Smith appeals, and for reasons that follow, we reverse.

Smith alleged in his complaint that he is a Union member with "a handicap, which interferes with one or more of [his] major life activities." He claimed that the Union "violated [his] rights under the law by failing to provide available work to [him] because of [his] handicap." According to the complaint, the Union's "violations of [Smith's] rights were willful and intentional, and [Smith] should therefore recover punitive damages in an amount sufficient to deter the [Union] from willfully violating the law in the future." Smith also sought "statutory damages and reasonable attorney's fees." In addition to monetary damages, Smith prayed for "temporary and permanent injunctive relief enjoining the [Union] from discriminating against [him] and from violating [his] rights under Georgia law."

The Union was served with Smith's complaint on October 17, 2000. On November 2, 2000, without filing an answer, the Union filed its motion to dismiss. The Union argued that the complaint should be dismissed because it did not identify the laws underlying Smith's claim. Assuming that Smith was relying on the Georgia Equal Employment for Persons With Disabilities Code[1] (the "Act"), the Union further contended that the complaint should be dismissed because it lacked Smith's written consent and failed to show that the claim was timely filed under the Act.[2]

Smith responded that his "complaint [was] clearly sufficient under the notice pleading requirements of the Civil Practice Act,"

---

[1] See OCGA §§ 34-6A-1 through 34-6A-6.
[2] See OCGA § 34-6A-6 (a).

and he moved the trial court to enter a default judgment against the Union for failing to answer. On April 5, 2002, Smith also filed a "Consent for Legal Action" stating that he consented to the complaint filed by his attorney.

In its order disposing of these motions, the court noted that, at the motions hearing, Smith "acknowledged . . . that he is proceeding under State law." Finding that the common law does not recognize a cause of action for employment discrimination based on handicap, the court reasoned that Smith's claim must have been brought under the Act. And, because Smith failed to file a written consent with his complaint, which the trial court characterized as a "condition precedent to [the] action," the court concluded that the complaint failed to state a cognizable claim. On appeal, Smith asserts that the trial court erred in dismissing his complaint because his complaint states a cause of action and his failure to file a consent was an amendable defect. Smith also argues that the court should have entered a default judgment because the Union did not answer his complaint.

1. The Georgia Civil Practice Act ("CPA") requires a defendant to file an answer within 30 days after being served with a summons and complaint.[3] Under the CPA, "the filing of a motion by the defendant does not toll the time for filing an answer,"[4] and if a defendant has not been granted an extension and fails to file its answer within this time, "the case shall automatically become in default."[5] But a default does not necessarily entitle a plaintiff to a judgment for damages:

> A defendant in default is in the position of having admitted each and every material allegation of the plaintiff's petition except as to the amount of damages alleged. The default concludes the defendant's liability, and estops him from offering any defenses which would defeat the right of recovery. Even so, the [Union] is correct when it points out that the default operates to admit only the well-pleaded allegations of the complaint and the fair inferences and conclusions of fact to be drawn therefrom. Thus, [the Union] is not precluded by operation of the default from showing that no claim existed which could allow [Smith] to recover.[6]

And, given such right, "it is error to grant a motion for a default judgment prior to ruling on a timely, pending motion, whether a motion

---

[3] See OCGA §§ 9-11-5 (d); 9-11-12 (a).
[4] *Cato Oil &c. Co. v. Lewis*, 250 Ga. 24, 25 (2) (295 SE2d 527) (1982).
[5] OCGA § 9-11-55 (a).
[6] (Citations and punctuation omitted.) *Azarat Marketing Group v. Dept. of Admin. Affairs*, 245 Ga. App. 256, 257 (1) (b) (537 SE2d 99) (2000).

to dismiss for failure to state a claim or motion for summary judgment."[7] Accordingly, before addressing whether Smith was entitled to a default judgment, we must consider, as did the trial court, the merits of the Union's motion to dismiss.[8]

2. We conduct a de novo review of the trial court's order dismissing the complaint.[9] In assessing the sufficiency of Smith's allegations, we are mindful that Georgia law requires only notice pleading, and "pleadings are liberally construed to serve the best interests of the pleader."[10] Under these liberal rules of construction, we need not find that Smith set forth a cause of action.[11] Nor do we need "to find that the complaint is perfect in form or that it sets out all of the issues with particularity. It is only necessary that the complaint place the [Union] on notice of the claim against [it]."[12] The complaint should be dismissed only if

> (1) the allegations of the complaint disclose with certainty that [Smith] would not be entitled to relief under any state of provable facts asserted in support thereof, and (2) the [Union] establishe[d] that [Smith] could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.[13]

Construed in this manner, we find that Smith's complaint states a claim for which relief can be granted. Inasmuch as Smith acknowledged that his claim was predicated on state law,[14] and considering that discrimination based on a disability is not a tort recognized at common law,[15] we agree with the trial court that, to the extent Smith asserted a claim, it must be based on the Act.

The Act generally prohibits a labor union from discriminating

---

[7] *Cato Oil,* supra.

[8] See id. at 25-26.

[9] See *Richards v. State Farm &c. Ins. Co.,* 252 Ga. App. 45, 47 (555 SE2d 506) (2001).

[10] (Punctuation omitted.) *Duke v. Buice,* 249 Ga. App. 164, 165 (547 SE2d 561) (2001).

[11] *State Soil & Water Conservation Comm. v. Stricklett,* 252 Ga. App. 430, 436 (4) (a) (555 SE2d 800) (2001).

[12] (Punctuation omitted.) *Andemeskel v. Waffle House,* 227 Ga. App. 887 (2) (490 SE2d 550) (1997).

[13] (Punctuation omitted.) *Mooney v. Mooney,* 235 Ga. App. 117 (508 SE2d 766) (1998).

[14] Smith does not dispute that he acknowledged he is proceeding under state law, and because the hearing transcript is not part of the record, we have no basis to find otherwise.

[15] See *Bowers v. Estep,* 204 Ga. App. 615, 619 (3) (420 SE2d 336) (1992); *Smith v. Milliken & Co.,* 189 Ga. App. 897, 898-899 (2) (377 SE2d 916) (1989).

against one of its members based on the member's disability. It provides that

> [n]o labor organization shall exclude or expel from its membership or otherwise discriminate against individuals because of their disability; nor shall a labor organization limit, segregate, or classify its membership or classify or fail or refuse to refer for employment any individual with disabilities in any way which would deprive or tend to deprive any individual with disabilities of employment opportunities, would otherwise affect such person's employee status or employment applicant status, or would adversely affect such person's wages, hours, or conditions of employment because of such person's disability.[16]

The Act defines a disabled individual as "any person who has a physical or mental impairment which substantially limits one or more of such person's major life activities and who has a record of such impairment."[17] The allegations in Smith's complaint, which virtually track parts of these Code sections, state a claim that the Union discriminated against him based on a disability, and the Act authorizes "[a]ny individual with disabilities who is aggrieved by an unfair employment practice against such individual [to] institute a civil action against the persons engaged in such prohibited conduct."[18] Accordingly, to the extent the Union argues that the complaint was properly dismissed because it failed to substantively set forth a claim, the argument lacks merit.

3. We also find no merit in the Union's contention that the complaint was properly dismissed because Smith failed to allege that he filed the claim within the statute of limitation.[19] This contention ignores Georgia's liberal pleading rules,[20] and we are unaware of any authority that demands the statute of limitation be pled as a special matter.[21] Moreover, even if Smith was required to allege when the discrimination occurred, the Union was not entitled to dismissal, but to move for a more definite statement.[22]

---

[16] OCGA § 34-6A-4 (c).

[17] OCGA § 34-6A-2 (3).

[18] OCGA § 34-6A-6 (a).

[19] OCGA § 34-6A-6 (a) requires the complaint to be filed "within 180 days after the alleged prohibited conduct occurred."

[20] See *Stricklett*, supra; *Duke*, supra; *Mooney*, supra; *Andemeskel*, supra.

[21] See OCGA § 9-11-9 (requiring that certain special matters be pled with particularity).

[22] See *Skelton v. Skelton*, 251 Ga. 631-632 (1) (308 SE2d 838) (1983); *Alta Anesthesia Assoc. of Ga. v. Gibbons*, 245 Ga. App. 79, 90 (9) (537 SE2d 388) (2000); OCGA § 9-11-12 (e).

4. We further disagree that Smith's failure to file a written consent contemporaneously with his complaint merited dismissal. The consent requirement provides that "no person shall be a party plaintiff to any . . . action [under the Act] unless such person gives his or her consent in writing and such consent is filed with the court in which the action is brought."[23] Although Smith did not file a consent with his complaint, we conclude that this was an amendable defect.

Before stating our reasons for this conclusion, however, we question whether the legislature intended to require express consent where there is only a single plaintiff who is represented by the attorney filing the complaint. Our uncertainty rests on the precept that

> [t]he attorney is the agent of the client for the purpose of the litigation in question. The acts of the attorney, within the scope of his authority, are binding on the client. Whatever is done in the progress of the cause by the attorney, is considered done by the party. The attorney has implied authority to do everything necessary and proper in the regular and orderly conduct of the case, provided his acts affect the remedy only and not the cause of action. . . . The apparent authority of attorneys in any proceeding before the court is plenary so far as the court and the opposing parties are concerned, for necessarily it must be adequate to all the exigencies of litigation. To be agents with such authority is one of the reasons for the existence of the Bar.[24]

In this case, where there is only one plaintiff, and the complaint states that it was filed by the "ATTORNEY FOR PLAINTIFF," it seems implicit that Smith's counsel had the authority to file the complaint and that Smith consented to being named as the plaintiff.

Assuming that the legislature intended for Smith to file a consent, we believe that the CPA allowed him to cure his missing consent by amendment. OCGA § 9-11-15 (a) permits "[a] party [to] amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order." And, if "the claim or defense asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."[25] These provisions have been "liberally construed in

---

[23] OCGA § 34-6A-6 (a).

[24] (Citations and punctuation omitted.) *Locklear v. Morgan*, 127 Ga. App. 326, 328-329 (1) (193 SE2d 208) (1972) (although Code required plaintiff's affidavit showing compliance with nonresident service of process statute, counsel's affidavit was sufficient).

[25] OCGA § 9-11-15 (c).

favor of the allowance of amendments, particularly when the party opposing the amendment is not prejudiced thereby."[26]

Among the defects that are curable by amendment is the failure to file a verification with a pleading where one is required by the Code.[27] In *MCG Dev. Corp. v. Bick Realty Co.*, the defendants failed to file a verified answer even though a local rule required one and provided that " '[n]o appearance will be recognized unless accompanied by such verified answer.' "[28] The trial court refused to allow the defendants to cure the verification defect and entered a default judgment against them. We reversed, finding that the

> [d]efendants sought in good faith to correct an inadvertent oversight; the amendments were not sought as a dilatory measure; [and] plaintiff would not have been put to disadvantage by allowance of the amendments. In the interest of justice, leave to amend should have been granted. The Court does not take the position that the defendant should be penalized because of an apparent oversight on behalf of its counsel. The sporting element of pleading is no longer with us.[29]

We can discern no reason to treat the defect of a missing consent differently from the omitted verification at issue in *MCG Dev.* The consent and verification are similar in nature — both contain averments concerning the propriety of the underlying pleading — and each was required to be filed before the individual could appear as a party before the court. Furthermore, although Smith did not need leave of court to file his consent,[30] there is no evidence that he was acting in bad faith or that the Union was prejudiced *by the late filing*.[31] Accord-

---

[26] *MCG Dev. Corp. v. Bick Realty Co.*, 140 Ga. App. 41, 43 (2) (230 SE2d 26) (1976); see also *Hutto v. Plagens*, 254 Ga. 512, 514 (2) (330 SE2d 341) (1985) (recognizing that "[t]he right to amend is properly broad").

[27] See *Rigby v. Powell*, 233 Ga. 158, 159 (2) (210 SE2d 696) (1974), overruled on other grounds, *Wilson v. Nichols*, 253 Ga. 84, 86 (3) (316 SE2d 752) (1984); *MCG Dev.*, supra at 43 (1); see also *North Ga. Med. Center v. Food Lion*, 238 Ga. App. 78-79 (517 SE2d 799) (1999) (pleading signed by unlicensed attorney is curable by amendment relating back to original pleading); *A. H. Robins Co. v. Sullivan*, 136 Ga. App. 533, 535-536 (221 SE2d 697) (1975) (providing examples of proper changes permitted by amendment that relate back to date of original pleading).

[28] *MCG Dev.*, supra at 42.

[29] (Punctuation omitted.) Id. at 43-44 (3).

[30] A pretrial order had not been entered. See OCGA § 9-11-15 (a).

[31] Although the trial court's order suggests that the Union was prejudiced by being "retroactively placed in default by the untimely filing of Plaintiff's written consent," the Union placed itself in default by failing to file an answer within 30 days as required by OCGA § 9-11-12 (a). Furthermore, a trial court has discretion to open a default before final judgment under OCGA § 9-11-55 (b), but it does not appear that the Union ever moved the trial court for this remedy, and we express no opinion on the propriety of such a motion in this case.

ingly, the trial court erred in dismissing Smith's claim based on his failure to file his consent contemporaneously with his complaint.[32]

5. We must now consider whether the trial court also erred in denying Smith's motion for entry of a default judgment. As stated above, the Union is in default because it failed to file an answer.[33] And, by virtue of the default, the Union has admitted Smith's allegations concerning its liability.[34] But, Smith has claimed only unliquidated damages, and he must, therefore, still prove the amount of those damages.[35] Accordingly, the matter is remanded for a determination of the amount of damages, if any.[36]

*Judgment reversed and remanded. Barnes and Adams, JJ., concur.*

DECIDED MARCH 7, 2003 —
RECONSIDERATION DENIED MARCH 31, 2003.

*Walter D. Adams*, for appellant.
*Fulp & Holt, Carl G. Fulp III*, for appellee.

---

[32] See *Rigby*, supra; *Edwards v. Edwards*, 227 Ga. 307, 308 (1) (180 SE2d 358) (1971); *MCG Dev.*, supra.

[33] See OCGA §§ 9-11-12 (a); 9-11-55 (a); *Cato Oil*, supra.

[34] See OCGA § 9-11-55 (a); *Azarat Marketing*, supra.

[35] See OCGA § 9-11-55 (a); *Carter v. Ravenwood Dev. Co.*, 249 Ga. App. 603, 605-606 (2) (549 SE2d 402) (2001); *T.A.I. Computer v. CLN Enterprises*, 237 Ga. App. 646, 647 (1) (a) (516 SE2d 340) (1999).

[36] See *T.A.I. Computer*, supra at 648; see also OCGA § 34-6A-6 (b) (addressing the types of relief available under the Act). Inasmuch as the issue of damages has not been addressed below, we render no opinion concerning the amount or types of damages and other relief Smith may receive.