**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 10, 2023**

# In the Court of Appeals of Georgia

A22A1545. KAREKEZI et al. v. PINNACLE SYSTEMS, INC.

PIPKIN, Judge.

In October 2020, Appellant Godefroid Karekezi suffered a severe injury to his hand while performing his job as a clutch press operator at Dayton Superior Corporation ("Dayton") in Braselton, Georgia. He and his wife Diane Murekatete (collectively "Appellants") filed, respectively, a failure to warn and derivative loss of consortium claims against Appellee Pinnacle Systems, Inc., ("Pinnacle") the manufacturer of a "light curtain" safety device that had been paired with the clutch press. Pinnacle filed a motion to dismiss, which the trial court granted, and Appellants timely filed this appeal. As more fully set forth below, we now affirm.

On appeal of a trial court's ruling on a motion to dismiss, our review is de novo. However, we construe the pleadings in the light most favorable to the plaintiff with any doubts resolved in the plaintiff's

favor. Our role is to determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts.

(Citations and punctuation omitted.) *Handberry v. Stuckey Timberland, Inc.,* 345 Ga. App. 191, 191 (812 SE2d 547) (2018). "The existence of a legal duty, . . . is a question of law for the court." *Maynard v. Snapchat, Inc.,* 313 Ga. 533, 535 (2) (870 SE2d 739) (2022).

So viewed, the complaint alleges that on October 1, 2020, Karekezi was employed at Dayton as a clutch press operator. On that date, he was using a "full-revolution" clutch press to cut and bend rebar. The clutch press was guarded by a cage-like barrier on the back side, while the front side, where Karekezi sat, was "guarded" by a "light curtain," manufactured by Pinnacle. A light curtain is a "presence sensing point of operation device" that emits a beam of light across the opening of a machine; when the light beam is broken by something passing through the beam, the machine shuts down. The light curtain consisted of a control box and two pylons, which acted as the emitter and receiver of the light beam.

On the day he was injured, Karekezi reached through the light curtain with his left hand, breaking the light beam, and then into the clutch press to adjust a piece of

2

rebar that was stuck in the press. According to the complaint, Karekezi had been instructed by "management" at Dayton to reach inside the press if a piece of rebar became stuck in the press and was assured by Dayton management that the press would stop if he broke the light beam. However, instead of immediately stopping, the clutch press continued to cycle and came down on his left hand, crushing his hand and fingers. As a result of his injury, four of Karekezi's fingers and most of his left hand were amputated, leaving him with a life-long disability.

Although Karekezi had been told that breaking the light beam would stop the machine, federal regulations prohibited the use of a light curtain on a full-revolution clutch press like the one Karekezi was operating because, depending on the point in the cycle where the machine was stopped, inertia would propel the machine forward to complete the cycle. Pinnacle was aware that its light curtain should not be used with a full-revolution press and had placed the following warnings on the light curtain's control panel and both pylons:

WARNING:

Do not operate this light curtain until it is properly installed according to OSHA[1] 1910.217, ANSI B11.19-1982, and the installation manual which dictate proper distance from point of operation, the use of additional mechanical guards, alignment, testing, and operational safety.

OSHA 1910.217 (c) (3) (iii) (a), which can be found at 29 CFR § 1910.217 (c) (3) (iii) (a), specifically prohibits the use of presence-sensing point-of-operation devices, such as a light curtain, on any press machine using full revolution clutches.[2] Further, according to the complaint, the instruction manual for the light curtain also warned that it "must NOT be used on full revolution presses or any machine that cannot be commanded to stop at any time." Appellants allege in their complaint that (1) these warnings were insufficient because they did not adequately communicate the risks of improper use to the *operator* of the machine; (2) the warning labels were vague and generalized and did not "graphically advise" against the anticipated harm; and (3) the size, color, location and content of the warning labels were inadequate.

---

[1] OSHA stands for Occupational and Safety Health Administration and is part of the Department of Labor. Under 29 USC § 654 (a) (2) "Each employer . . . shall comply with occupational safety and health standards promulgated under [OSHA]."

[2] According to the complaint, ANSI (American National Standards Institute) B11.19-1982 contains a similar prohibition. It appears that payment must be made to access ANSI standards.

Pinnacle filed a motion to dismiss for failure to state a claim under OCGA §

9-11-12 (b) (6) on the grounds that, at the time Karekezi was injured, the light curtain

was not being used in the intended manner and that Pinnacle had provided adequate

and sufficient warnings against using the light curtains to guard full-revolution clutch

presses. Pinnacle did not file a timely answer and, in addition to responding to

Pinnacle's motion to dismiss, Appellants moved for a partial default judgment as to

liability.[3] Following a hearing, the trial court granted Pinnacle's motion to dismiss

and deemed all other pending motions moot.[4]

1. Appellants' first three enumerations of error challenge the trial court's grant

of Pinnacle's motion to dismiss for failure to state a claim.[5]

"In failure to warn cases, the duty to warn arises whenever the manufacturer

knows or reasonably should know of the dangers arising from the use of its product.

---

[3] Pinnacle filed an answer after Appellants moved for default.

[4] The trial court properly addressed Pinnacle's motion to dismiss before reaching Appellants' motion for default. See *Smith v. Local Union No. 1863, Intl. Longshoremen's Assn. of Clerks & Checkers*, 260 Ga. App. 683, 684 (1) (580 SE2d 566) (2003).

[5] Each enumeration challenges the grant of the motion on a separate ground. However, the trial court did not address or grant the motion on any particular ground, and we will address these arguments together.

The duty requires warning of nonobvious foreseeable dangers from the normal use of its products." (Citation and punctuation omitted.) *CertainTeed Corp. v. Fletcher*, 300 Ga. 327, 330 (2) (794 SE2d 641) (2016). Although a manufacturer is generally not liable for misuse or abnormal use of its product, a duty to warn may also arise when a particular misuse of a product is reasonably foreseeable. See *Collins v. Newman Machine Co.,* 190 Ga. App. 879, 881 (1) (380 SE2d 314) (1989) ("Where [a manufacturer] has reason to anticipate that danger may result from a particular use . . . he may be required to give adequate warning of the danger[.]") (citation and punctuation omitted); *Talley v. City Tank Corp.*, 158 Ga. App. 130, 137 (3) (279 SE2d 264) (1981) ("A duty to warn of danger in the use of a product extends only to the use of the product in the manner reasonably contemplated and anticipated by the manufacturer."). "[W]hether a duty to warn exists depends upon the foreseeability of the use in question, the type of danger involved, and the foreseeability of the user's knowledge of the danger." (Citation and punctuation omitted.) *Suzuki Motor of America, Inc. v. Johns*, 351 Ga. App. 186, 193 (2) (b) (830 SE2d 549) (2019). "Accordingly, a product manufacturer has no duty to . . . warn against harm caused by an unforeseeable misuse of its product[.]" *Woods v. A. R. E. Accessories*, 345 Ga. App. 887, 891 (815 SE2d 205) (2018).

6

Appellants argue that because Pinnacle placed warnings on the light curtain and in the operating manual against using the light curtain with a full-revolution clutch press, the misuse of the light curtain was obviously foreseeable. As a starting point, we will assume that Pinnacle had a duty to warn purchasers and installers of its light curtain and owners of full-revolution clutch presses against pairing its product with that particular machine. Thus, the question is whether Pinnacle also had a duty to warn clutch press operators against misuse of its product despite already having warned the entities or persons who would be in the position to misuse the product by pairing it with a full-revolution clutch press.[6]

We do not agree with Appellants that because it might be reasonably foreseeable to Pinnacle that its product might be improperly installed on a full-revolution press *if it did not warn against such danger*, it also means that it was reasonably foreseeable that its warnings would be ignored and thus it also had a duty to warn the operators of those machines against that danger. According to Appellants, Pinnacle should have foreseen that Dayton would breach its duty of ensuring that the

_____

[6] There is no assertion here that Pinnacle installed the light curtain. Appellants state in their response to Pinnacle's motion to dismiss and in their brief on appeal that the press and light curtain were purchased, installed, and owned by Dayton. Nevertheless, it is true, as they state in their reply brief, that they made no allegation in their complaint regarding who, in fact, installed the light curtain.

light curtain was properly installed, asserting in their reply brief that "Dayton does not trade in and was not an expert in light curtains or safety equipment and thus Pinnacle cannot show that Dayton's negligence was unforeseeable." While it is true that the complaint contains no allegations concerning Dayton's knowledge of light curtains, the federal regulation referenced in the complaint and placed in three different positions on the light curtain is unequivocal that "[a] presence sensing point of operation device . . . may not be used on machines using full revolution clutches." 29 CFR 1910.217 (c) (iii) (a). OSHA federal regulations are directed toward employers and 29 CFR 1910.217 (c) (1) (i) specifically places "the responsibility on the employer to provide and insure the usage of 'point of operation guards' or properly applied and adjusted point of operation devices on every operation performed on a mechanical power press." Under these facts, the trial court could have properly determined, as a matter of law, that Pinnacle owed no duty to provide a separate warning to the operator of the machine.

"Moreover, proximate causation is a necessary element of a failure to warn claim." *Davis v. John Crane, Inc.*, 353 Ga. App. 243, 251 (2) (b) (836 SE2d 577) (2019). "Proximate cause is that which, in the natural and continuous sequence, unbroken by other causes, produces an event, and without which the event would not

8

have occurred." (Citation and punctuation omitted.) *Johnson v. Avis Rent A Car System, LLC*, 311 Ga. 588, 592 (858 SE2d 23) (2021). "A breach of a duty constitutes a proximate cause of an injury only if the injury is the probable result of the breach, according to ordinary and usual experience, as opposed to merely a possible result of a breach, according to occasional experience." *Snapchat*, 313 Ga. at 538-539 (2).

> Further, under the well-established doctrine of intervening causes, a defendant's breach of a duty does not constitute a proximate cause of a plaintiff's injury when there has intervened between the act of the defendant and the injury to the plaintiff, an independent act of omission of someone other than the defendant, which was not reasonably *foreseeable* by the defendant and was not triggered by the defendant's act, and which was sufficient itself to cause the injury.

(Citation and punctuation omitted; emphasis in original.) Id. at 539 (2). As we have explained,

> Proximate cause . . . is a separate limit on legal liability. A determination that a defendant's conduct was not the proximate cause of the injury is not a determination that no causal connection existed but that, as a matter of policy, the defendant's conduct and the plaintiff's injury are too remote for the law to countenance recovery. This policy decision is largely grounded in the concept of foreseeability: a wrongdoer should be responsible only for consequences which, based

on our common sense and understanding, would probably or naturally flow from his conduct.

(Citations and punctuation omitted.) *Blondell v. Courtney Station 300 LLC*, 362 Ga. App. 1, 5 (1) (865 SE2d 589) (2021).

Here, Karekezi's employer paired the light curtain with a full-revolution clutch press despite being specifically warned, both by Pinnacle and federal regulations and standards, not to do so. Under these circumstances, when

the injury clearly resulted from negligent installation . . . occurring after the product left the manufacturer rather than from a defect in the product itself, and since the product was sold to a commercial operator [that had been specifically warned against the danger of pairing it with a full-revolution clutch press], we do not believe the manufacturer's failure to warn [the operator of the machine] of such dangers may be considered the proximate cause of the injury.

*Omark Indus., Inc. v. Alewine*, 171 Ga. App. 207, 209 (319 SE2d 24) (1984).

"While the question of proximate cause is usually submitted to the jury as a question of fact, it may be decided as a matter of law where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion, that the defendant's acts were not the proximate cause of the injury." *Union Carbide v. Holton*, 136 Ga. App. 726, 729 (1) (222 SE2d 105) (1975). And our Supreme Court

10

has recently recognized it may be appropriate to resolve liability on proximate cause grounds even at the motion to dismiss stage. See *Snapchat,* 313 Ga. at 552 (7); *Maynard v. Snapchat, Inc.*, 2023 Ga. App. LEXIS 37, 2023 WL 385210, \*2-3 (Case No. A20A1218, decided Jan. 25, 2023) (on remand, conducting proximate cause analysis in the context of motion to dismiss as instructed by Supreme Court). Based on the foregoing, we conclude that this is such a case and that, therefore, the trial court did not err in dismissing Appellants' complaint under OCGA § 9-11-12 (b) (6).

2. In light of our holding in Division 1, we need not reach the issue of whether the trial court erred by deeming moot Pinnacle's motion for a partial default judgment. See *Smith*, 260 Ga. App. at 684 (1).

*Judgment affirmed. Rickman, C. J., and Miller, P. J., concur*.